Judge Carr.
I have carefully examined the reasoning and the authorities relied on by my brother Green, in this case; and I have come to the conclusion, that upon precedent and authority, he is right. At the same time, I must say, that I believe the Legislature intended to give the assignee the legal title; and if-this were res integra, I should strain bard to effectuate that intention. In the actual state of things, it is safest stare decisis, and leave it to the Legislature to explain their intention, or express their will. I concur.
*268 Judge Green.
This case turns upon the question, whether the assignee has, under our Statute authorising assignments of bonds, &c. a legal right to the debt, or only, as at common law, an equitable fight to the debt, with a capacity to sue in his own name in a Court of Law, by virtue of the Statute, to enforce this equitable right? If the legal title to the debt passes by the assignment, then the assignor having no longer any title, legal or equitable, no action can be maintained in his name. If the equitable title only passes, then the assignee may sue in the name of the assignor, as at common law, upon the legal title remaining in the assignor, or in his own name, by virtue of the Statute, on his equitable •right; the Statute, upon this construction, giving a new remedy without abolishing the old.
By the common law, anciently, a chose in action was not assignable; and the assignment had no effect at law, or in equity. 3 Vin. Abr. 151, pl. 2, 152, pl. 10. After-wards, Courts of Equity protected assignments made in satisfaction of a precedent debt,-but not such as were made, either voluntarily, or for a consideration then paid; since, to protect such assignments, would lead to maintenance. Ibid. 151, pl. 5, and note. The Courts of Law adopted this distinction, and took notice of the equitable rights of the assignee, when a suit was brought in the name of tbe assignor for his benefit. Ibid. 152, pl. 9. At an after period, Courts of Equity respected and protected all assignments made on good consideration, without regard to the distinction above mentioned; and the Courts of Law followed the example Ibid. 152, pl. 10, note; 150, B. pl. 2. And now, in all cases, the Courts of Law in England protect the rights of an assignee, suing in the name of the assignor, so far as not to permit the assignor to dismiss the suit or to release the action.
Our first Statute, authorising assignments, was enacted in 1705. 3 Hen. Stat. at Large, 378. It provides, “that *269 it shall and may be lawful for any person or persons, to assign or transfer any bond or bill for debt, over to any other person or persons whatsoever,” and that “ the assignee or assignees, his and their executors, &c. by virtue of such assignment, shall and may have lawful power to commence and prosecute any suit at law, in his or their own name or names, for the recovery, &.c. as the first, (obligee) his executors, &.c. might or could lawfully do. Provided, that in any suit, commenced on such bond or bill assigned, the plaintiff shall be obliged to allow all discounts that the defendant can prove, either against himself, or against the first obligee.”
An Act of 1730, 4 Hen. Stat. at Large, 275, extended the provisions of the Act of 1705, to promissory notes. In 1786, these Statutes were re-enacted in an abridged form, providing that “assignments of bonds, bills and promissory notes, and other writings obligatory, for the payment of money or tobacco, shall be valid, and an assignee of any such may, thereupon, maintain an action of debt in his own name, but shall allow all just discounts, not only against himself, but against the assignor, befot'e notice of the assignment was given to the defendant.” In 1795, the provisions of the Act of 1786, were extended to all writings obligatory whatever; and these Acts were re-enacted at the revisa] of IS 19.
I consider the Acts subsequent to that of 1705, as not intended to vary the construction of the first Act, in respect to the effect of the assignment, although the phraseology is varied, with a view to abridge the law, as is common in our revisáis; and this opinion seems always to have prevailed in this Court, where it has been held, that the assignee takes the bond, not only subject to all discounts, according to the terms of the Statute, but to all equities (whether coming within the term discounts or not,) to which it was subject in the hands of the obligee; Norton v. Rose, 2 Wash. 233. Pickett v. Morris, Ib. 255. Stockton v. Cooke, 3 Munf. 68; and that, notwithstanding the *270 Statute, the assignee was entitled to the same remedy in equity, that he was entitled to before the Statute; the re-needy at law being cumulative, and not exclusive. Wynne v. Bowles, 6 Munf. 23.
To justify these decisions, the Court must have considered, that the legal title to the debt did not pass by the assignment, but only an equitable right, with the right to sue. at law, in the name of the assignee: that the declaration, that it should be lawful to assign, was intended only to abrogate the rule of the common law, that the assignment of a chose in action was not available to any purpose; and that the right of the assignee to sue in his own name, resulted from the express provision, to that effect, of the Statute; which right would, without such provision, have resulted from the transfer of a legal title to the debt, and if such legal title had passed, the authority to sue in the name of the assignee would have been superfluous. If the Court had held, that the legal title to the debt passed by the assignment, then they could not have held, that any equity against the bond, not coming within the description of discounts, could bind the assignee, without notice of the equity; as, if the equity was founded on a fraud in the consideration of the bond. This could be no defence at law, not being a discount; and after judgment for the assignee at law, if the debtor applied for relief on that ground, to a Court of Equity, a plea that the assignee was a bona fide purchaser of the legal title to the debt secured by the obligation, without notice of any equity, would be a complete defence, on the maxim of the Court of Equity, which is without exception, that he who has the legal title, and equal equity, must prevail in that Court; and a purchaser without notice has a perfect equity. But, where a purchaser acquires only an equitable title, the maxim is, qui prior est tempore, potior est jure. So, if the legal title to the debt passed by assignment, a Court of Equity could not aid the assignee, otherwise than they could have aided any other person having a legal title, when he was pre *271 vented from pursuing his right at law, by fraud, accident or mistake. The original jurisdiction of the Court of Equity, to aid an assignee of a chose in action, was founded on the fact, that he had only an equity, which he could not assert at law. If the Statute had the effect of giving the assignee the legal title to the debt, as well as a remedy at law, then this foundation of the jurisdiction would fail; and although the assumption, by a Court of Law, of a jurisdiction once confessedly belonging exclusively to a Court of Equity, will not take away the original jurisdiction of the latter; yet, when a Statute converts an equitable estate into a legal estate, it destroys the jurisdiction of the Court of Equity. Thus, before the Statute of uses, all uses were solely of equitable jurisdiction. After that Statute, all uses executed by it, became subjects of the jurisdiction of the Courts of Law, and were taken away from equity; the latter retaining no jurisdiction over any uses, but those not executed by the Statute.
Upon authority, therefore, I conclude, that an assignee, under our Statute, does not acquire the legal title to the debt, but an equitable right, which, ty virtue of the Statute, he may assert at law in his own name; and that he has his election to sue at law, in his own-name, under the Statute; or, in the name of the original obligee, for his benefit, upon the strength of the legal title, remaining in the obligee: that the judgment must be reversed, and judgment given for the appellant, notwithstanding the verdict of the jury upon the issue joined upon the second plea; that plea and verdict alleging matter, which, although true, is no bar to the plaintiff’s action.
Judge Coai.ter concurred, and the judgment was reversed .*