Tucker, P.
If this case depended solely upon the general principles of the law as to assignees, I should have no difficulty in reversing the decree. Nothing is better established, than that an assignee takes the obligation assigned to him subject to the same equity that affected it in the hands of the obligee. This was the doctrine of courts of equity anteriour to our statute (Chan. Ca. 232. 2 Vern. 428. 692. 765.), and the statute has, in this respect, made no alteration; for it was not intended to abridge the rights of the obligor, nor to enlarge those of the assignee. Norton v. Rose, 2 Wash. 248. Garland v. Richeson, 4 Rand. 266. The statute merely had the effect of enabling the assignee to sue in his own name, instead of leaving him as at common law, under the embarrassments arising out of a suit for his benefit in the name of the obligee. The same construction has been given to the Pennsylvania statute in pari materia; Wheeler v. Hughes, 1 Dall. 23. If, therefore, the appellant could, in equity, have arrested the recovery of the amount of his bond by Dillard, the obligee, he has equal equity against Campbell, unless he has waived or forfeited it by his conduct.
The counsel, apparently aware of this, contended that Feazle would not have been entitled to injoin the recovery of the bond by Dillard himself. I cannot think so. That a bond not due cannot be used as a set-off at law, is very *35 true; and it seems to have been supposed, that if the bond attempted to be set-off, was not due when the assigned bond became due, it could not be set up against tire assignee, at law. Stewart v. Anderson, 6 Cranch 203. See also Hankey v. Smith, 3 T. R. 507. in note. Be this as it may, it affords no ground for the opinion, that a bond not yet due, cannot be the subject of set-off in equity, whatever may be the circumstances. In a naked case, where there is no reason to apprehend insolvency, it would by no means follow, that instead of paying what I owe to my creditor to-day, I should set-off against it what he may on a different transaction owe me twelve months hence. For as money is sometimes worth more than its interest, and the payment of it when due is often of vital importance to the creditor, the rebate or discount of interest may bo a poor compensation for the loss of prompt payment. On the other hand, if I owe an insolvent man 100 dollars, and I hold his bond for the same sum payable a week hence, neither equity nor good sense would demand, that 1 should pay my money to him, with the certainty of losing that which is due from him to me. The insolvency constitutes a new ingredient in the case, and upon the principle of the bill quia timet, a court of equity will retain in my hands what I owe, for my indemnity, unless my adversary will secure me by some other satisfactory indemnity. Nothing is more common, I think, than the application of this principle to cases in equity. It is extended so far as to justify the suspension of the payment of purchase money, where there is an incumbrance upon the land purchased, Sugd. Law Vend. ch. 9. § 6. p. 345* and with us, even upon proof of better title in a third person to part of the land, although there has not been, and possibly never may be, an eviction, and of course the demand is both unliquidated and uncertain; Ralston v. Miller, 3 Rand. 4,4. Nor have I ever before heard a doubt suggested of the propriety of injoining the recovery of a judgment, when the plaintiff at law was insolvent, and was debtor to the defendant, to an equal amount by bond, though not *36 yet due. The case is not materially different, where the plaintiff in the injunction, is surety in a bond to a third perSOn for the plaintiff at law; for upon the supposition of the insolvency of the latter, the former is in equal danger of loss. In both eases, the court proceeds upon the same principle, of protecting the party from a payment of money to one, to whom, in justice and equity, he owes nothing.
This case, however, does not seem to me to depend on these principles. Otey’s testimony changes its aspect entirely. Whether the parties designed to constitute him arbitrator or not, I think we must consider that settlement as final. If he was arbitrator, this is clear; for the credit was claimed, was resisted, and was not allowed. If he was not arbitrator, still it is obvious that the assignee Campbell, and Feazle and Dillard met together, and called on Otey to adjust the credits to which Feazle was entitled. For what purpose? obviously, that it might be ascertained on the one hand, what Feazle owed upon the bond, and on the other, how far Campbell the assignee would be paid by him, and how far he should have to look to his failing debtor, Dillard, for further security, or indemnity for his liabilities. If Feazle had insisted on his equity, Campbell would have been warned of the necessity of pressing Dillard for some equivalent to what he would lose by that credit on Feazle’s bond. But Feazle did not urge it, nor intimate that it would be further insisted on. On the contrary, he acquiesced in the indorsement of credits, to the exclusion of this credit; and moreover, Otey says, that it was his impression from the transaction, that Feazle was to pay the balance without further deduction, to Campbell. Now, if the conduct of Feazle gave this impression to Otey, it may fairly be considered as having given it to Campbell. And if Feazle left Campbell under the impression that he would pay the amount, and not insist on his equity, it would be a fraud in him afterwards to attempt to set it up.
There is a paper in the cause, purporting to be signed by Dillard on the very day of the settlement. I do not consider it as proved. Otey, the only witness examined, never *37 heard of it; the handwriting is not proved, and it is cer- ' , . , „ . . . . 7 , tamly not admitted. But u it be gemnnej it looks very much like a fraud on the part of Dillard and Feazle. For it was executed on the very day of the settlement, when Feazle was perfectly aware of Campbell’s rights; and as neither Campbell nor Oley knew any thing of it, and there is no subscribing witness, it would seem to have been a secret transaction between Dillard and Feazle. What could have been its object, but to give Feazle the benefit of the credit, while Campbell was left to suppose he was to have the bond absolved from it, and was therefore diverted from pressing Dillard for farther security?
Upon the whole, I think the decree is right and should be affirmed.
Brooke, J. concurred.

 Ingraham’s edi. Philadelphia .1820.