Brockenbrough, J.
stated the pleadings, and the evidence of both parties set out in the demurrer, and then said—The law as to demurrers to evidence may now be considered as fully settled by the cases cited at the bar, of Green v. Judith, and Hansbrough’s ex’ors v. Thom. The practice of inserting in the demurrer, the evidence as well of the demurrant as of the party demurred to, is too well established to be now shaken: but the demurrant waives all evidence on his own part, that conflicts with that of the other party; he admits the evidence of his adversary to be true, and admits all inferences of fact that may be reasonably and fairly deduced from that evidence; and submits it to the court to deduce such fair and reasonable inferences. He thus gives every advantage to the evidence of his adversary; but still, if there is any part of his own evidence which does not conflict with that of the other party, nor with the fair and reasonable inferences from it, the demur-rant’s evidence will be duly estimated by the court in rendering its judgment. Let us test this case by these principles.
The plaintiffs gave in evidence the three bonds on which the suits were brought, with the indorsement on each of the name of Nicholas the obligee, whose handwriting they proved; they also proved, that on the 24th August 1819, a written notice was delivered to Clopton, the obligor in those bonds, that they had been regularly transferred by assignment to the plaintiffs, in whose possession they then were. So far, the evidence of the plaintiffs was proper to shew their title to recover, and being in no manner in conflict with the evidence of the defendant, was entitled to full weight. Whether the *291 rest of the plaintiffs’ evidence, that of their witnesses, Dupuy, Poindexter, Yancey and Pryor, was in conflict with the evidence of the defendant, I shall presently consider.
The defendant, to support his plea, that Clopton had paid the debt to Nicholas, before notice of Nicholas’s assignment to the plaintiffs,—offered in evidence, as a set-off the bond executed by Nicholas to Scott for 2247 dollars &c. and proved the assignment of that bond by Scott to Clopton, thirteen days before notice was given him of Nicholas’s assignment of Clapton’s bonds to the plaintiffs. This evidence of set-off would probably not have been admissible under the plea of payment, without an account filed with the plea stating the nature and particulars of the set-off so as to give the plaintiffs full notice of it, according to the statute, but for the replication, which shews that the plaintiff had full notice of its character, and its amount, and therefore dispensed with the filing of it, or rather admitted that it was filed.
Further to prove, that the set-off so offered was a genuine one, and that the bond from Nicholas to Scott sot forth in the replication was bona fide and for valuable consideration, and not for collusion and fraud, assigned by Scott to Clopton, before notice of Nicholas’s assignment of Clopton’s bonds to the plaintiffs, the evidence of Shelton and PaUeson was introduced by the defendant ; and the evidence of these witnesses is admitted by the demurrant to be true. And what does it prove ? That Clopton, before he had notice of Nicholas’s assignment to the plaintiffs, took an assignment from Scott of Nicholas’s bond to him; and that he gave his own obligation to Scott for it. Did no valuable consideration pass between them ? Fes : Clopton gained the time of six months, on each of the payments which he bound himself to make to Scott, in satisfaction of Scott’s assignment to him. Was this a contrivance, between them, to defraud the plaintiffs of a part of their *292 debt, by obtaining a set-off for the benefit of a third person ? It could not be intended to defraud the plaintiffs, because the parties did not know that the plaintiffs held Clopton’s bonds. Nor can it be fairly inferred, that there was a design to defraud any one. Clopton gained to himself an advantage, by purchasing the bond from Scott; and this negatives the position, that his intention was to benefit Scott at the expense of others. If it were doubtful whether such was the intention, the court ought not to infer such fraudulent design against the opinion of two intelligent men, witnesses to the transaction, and who are admitted by the plaintiffs to have told the truth. I conclude, then, that the assignment by Scott to Clopton, was a bona fide transaction, and that the latter became thereby the real owner of Nicholas’s bond, to Scott, arid had a right to set it off against the plaintiffs’ demand.
There are some parts of the evidence of Dupuy and. Yancey, the witnesses of the plaintiffs, which do conflict with the testimony of Shelton and Patteson; not as to the transaction when it occurred, but arising from the declarations of Clopton at a posteriour period. I refer, more especially, to that part of Yancey’s evidence, in which he states that Clopton told him, he did not consider the suits as his suits, but Scott’s; and that he should insist on -Scott’s employing counsel to defend them, to pay costs, and manage them as his own, for he should have nothing to. do with them. But we are bound to disregard that evidence, because it is in conflict with that which the plaintiffs have admitted to be true. If they had not withdrawn the subject from the consideration of the-jury, it is possible, nay it is probable, that that tribunal might, on weighing the evidence on both sides, have decided that it was a collusive, and not a bona fide transaction; it might have rightly so decided; and if so, this is another instance, added to that of Green v. Judith, of the hazard and danger of a demurrer to evidence.
*293 I think the judgment should be reversed, with costs; and a judgment entered for the appellees for the balanco duo them, after deducting the amount of the set-off, with the costs of the appellees in the circuit court.
Carr, J.
The settled rule, with respect to demurrers to evidence, is, that the court must reject all conflicting evidence on the part of the demurrant, take for true all the evidence demurred to, and draw all inferences from it, which a jury might fairly draw. We are to take the facts proved by the evidence of the defendant, without regarding any countervailing evidence adduced by the demurrant. The question is, whether the bond of Nicholas assigned by Scott to Clopton, was a good discount against Clopton’s bonds to Nicholas, in the hands of the plaintiffs, his assignees ? The transaction between Scott and Clopton, took place several days before notice of Nicholas’s assignment to the plaintiffs was given, to Clopton; and if it vested in Clopton a right to the assigned bond, there can be no doubt that it was a good discount, both under the plain words of the statute, and according to numerous decisions of this court. Scott’s assignment to Clopton was absolute, and it purpurts to be for valuable consideration; and a valuable consideration was in fact given lor it, in the written assumpsit of Clopton to Scott, though, I. presnme, this last fact is matter of no moment, in the question of set-off; for though it had been given to the assignee, the bond in his hands would be equally binding on the obligor, and equally a discount against: his own bond to the obligor. But the subsequent understanding and agreement are said to vary the ease. They certainly could not affect the power of the assignee over the bond: he might have sold it, destroyed it, assigned it away; and, in either case, must have accounted for it under his written promise. Many of our cases decide, that the assignee of a bond is in no better situation than the oh *294 ligee, in case of any discount or equity affecting him. If Nicholas himself had sued on these bonds of Clopton, and Clopton had offered this discount, could he have resisted it ? I cannot see on what possible ground. The amount of the subsequent agreement, was merely, that if by any law unknown to the parties, the assignment should be pronunced invalid, Clopton 'should not be exposed to a double payment. But there was no' such law; this subsequent understanding was perfectly nugatory, and could have no effect, to invalidate the assignment. It was founded in the caution and ignorance of the parties. They intended, the one to sell and the other to buy the bond, with the express view of setting it off against the debt for which Clopton had given his bonds to Nicholas, knowing, at the same time, that Nicholas had failed, and. that this was the only mode in which the bond could be made available. But although they knew that no notice,had been at that time given to Clopton, of any transfer of his bonds by Nicholas, they did not know, but there might be something else, some matter of fact or law, which might render the assignment invalid; and they provided for that event; a provision wholly idle, both because the assignment was good and lawful, and because if it had not been, the law made the very provision, which the parties undertook to make. I think the judgment should be reversed, and entered for the defendant on the demurrer.
Cabell, J.
I am of the same opinion. The real issue between the parties was, whether the bond of Nicholas to Scott was actually and bona fide assigned by Scott to Clopton, before the latter had notice of the assignment of Clopton1 s bonds to the plaintiffs ? I shall not go into a minute examination of the evidence of the defendant set out in the demurrer. I am satisfied, beyond a doubt, that that evidence, unopposed by the evidence of the plaintiffs, proves ail actual, absolute *295 and bona fide assignment to Cloplon, of the bond exccuted by Nicholas to Scott, before notice of the assignment of Clopton’s bonds. And if there be, in the plaintiffs’ evidence, any thing calculated to make a different impression, that evidence being contrariant to the evidence of the defendant, must be disregarded, according to the established law in relation to demurrers. In every action by the assignee of a bond, the defendant is allowed to avail himself, by way of discount, of every right acquired before notice of the assignment, in the same manner, and to the same extent, as if the bond had not been assigned, and as if the action had been in the name and for the benefit of the obligee. Now, if this action had been brought by Nicholas himself, and for his own benefit, no one, I think, could doubt, but that, on the evidence adduced by the defendant, the judgment ought to have been in his favour.
Brooke, J. concurred.
Tucker, P.
Upon looking into this record, I think the question arising out of it lies within a very narrow compass. On the one hand, it is beyond question, that the assignee must allow all just discounts, not only against himself, but against the assignor before notice of the assignment was given to the defendant. On the other hand, it is, I think, equally clear, that discounts mean counter demands of the defendant himself against the plaintiff; that they do not embrace demands of third persons against him, and that such demands are not within the meaning of the statute. Therefore, where the defendant offers a discount of a bond or note of the assignor to a third person, he must shew that he is the owner of that bond or note; and without such ownership, lie cannot be entitled to the discount; for without it, he could not maintain an action ; and a set-off or discount is but a substitute flu a cross action. *296 Indeed, without the ownership, payment to the party claiming the discount, would be no discharge, as against the real owner; and, whether the payment be in cash, or in a credit by way of discount, the obligor in the discounted note would be equally exposed to the action of the owner, notwithstanding the discount or payment to the other party. Then, the only question is, whether Clopton or Scott was the real owner of the bond of Nicholas to Scott, which purports to have been assigned to Clopton, about thirteen days before Clopton received notice of Nicholas’s assignment of'his bonds to the plaintiffs?
I cannot perceive any reasonable ground to doubt, that Clopton, by that assignment, became the owner of the bond. There was an express assignment made by Scott to him, which passed the ownership, whether we consider it the legal or equitable title. Scott could never set up the legal title (if he retained it, according to the case of Garland v. Richeson, 4 Rand. 266. to which decision I refer, though my reason has never been convinced by it) against the person to whom he had actually assigned for a valuable consideration; and the obligation given to Scott by Clopton was a valuable consideration. If, therefore, Clopton had assigned over to another, Scott would have been bound; so, if Nicholas had paid the money to Clopton^ Scott would have been barred; or if Clapton as assignee had sued Nicholas, the judgment would have been a bar to any subsequent claim of Scott. So too, upon the plea by Nicholas of no assignment by Scott to Clopton, it is obvious, the evidence in this record would have negatived the plea, there having been an actual assignment for valuable consideration. Nor, in this view of the subject, does it make any difference, that it was understood that Clopton might return the bond, if he could not get the discount; for this is not only what the law would in effect have declared, without the agreement, but more *297 over, it was a privilege given to him which he might waive, and the existence of which, for that reason, could not impair his complete ownership of the property. Clopton, then, was the owner of the property. He had a complete title to demand payment from Nicholas, and had Nicholas sued him, would have had a complete right to set off this demand in that suit. And if so, he had the same right to set it off against the plaintiffs’ demand, as he obtained the complete right to the set-off before notice of the assignment.
The objection, however, seems to be, that, as in the event of his foiling to get the discount, he might return the bond to Scott, Scott was still interested, and he was not so. But Scott would have been interested, independent of this agreement; for as he did not assign without recourse, he was liable as assignor. If, therefore, the existence of an interest in the assignor, would be fatal to the discount, no defendant could avail himself of an assigned bond by way of discount, unless he took the bond without recourse; a proposition which, I presume, will not be contended for. And as to the supposition that Clopton was not interested, that is negatived by the transaction. He was to pay full value, it is true, and he has not yet paid up the consideration. But in case the discount was allowed, he was to get time; and “ time is money” in the eye of the law, as well as in the estimation of the sage. Forbearance to sue, is a sufficient consideration to support an assumpsit; for the forbearance may be an inconvenience or risque to the creditor, and is generally an advantage to the debtor; and these are ample considerations. In this case, Clapton's interest was deep and direct. If the discount was not allowed, there would be an instant judgment against him for his whole debt. .Tf the discount was allowed, that judgment would be avoided, and he would be only bound to Scott for payment in easy instalments. The first might bring inevitable ruin *298 to his affairs; the last would relieve him from a destrucfive pressure, and enable him to pay off his debt without distress. Is not this an interest ? Would not this be a profit to Clopton ? And shall he be compelled to relinquish it ? Shall he be deprived of it, when he purchased it before notice of the assignment to the plaintiffs ? Had he actually paid the consideration, had he purchased the bond at a large discount from Scott, I presume, it would not be contended, that he should be denied his discount, when he procured the assignment prior to notice. The statute was intended to protect and preserve the rights of a debtor, who purchases fairly before notice of assignment. But it does not protect a right or interest of one description, more than another. It protects the defendant’s right in this case, to have the benefit of his contract with Scott for time, as much as it would have protected his light to the money, had he actually paid up to Scott the consideration money for the assignment As to the alleged fraud, and want of bona fides, I see nothing of it.
Judgment reversed; and judgment entered for the appellees, for the debts in the declarations demanded, to be discharged by the payment of 990 dollars, with interest See. that being the balance of the debt due by Clopton on his bonds to Nicholas assigned to the appellees, after discounting therefrom the amount, with interest, of Nicholas’s bond to Scott assigned to Clopton.