Mr. Justice Cox
delivered the opinion of the court.
The opinion of the court in this case will apply i n a number of other cases in which the same party is plaintiff.
The facts appear to be about these: On the 12th of December, 1865, the National Express and Transportation Company was chartered under the laws of Virginia, and organized and went into operation. It made some assessments upon its stockholders, amounting altogether to 20 per cent, of their subscriptions. It was, however, unsuccessful in business, and in August, 1866, the following year, a bill was filed in the Circuit Court of the United States at Richmond, by Josiah Reynolds, a stockholder, alleging fraud and mismanagement, and praying that the company be enjoined from a further prosecution of its business, and asking for a receiver, etc.
Nothing seems to have been done under this bill until after a long delay. But the next month, September 20,1866, the company executed a deed of assignment,'conveying to three trustees all its property of every description, including moneys payable to the company, whether on calls or assessments on stock of the company, notes, bills, etc.
The following month, October 4, 1866, there was a petition filed in the Circuit Court of the United States, in the cause already referred to, for the appointment of a receiver; *236 and on the 31st of December, 1866, a receiver was appointed.'
The deed of assignment from the express company undertook to transfer all its assets, including the subscriptions of stockholders, but it did hot undertake to give the trustees any authority to make calls upon the stockholders; and it has been held that this was a franchise and authority specially vested in the president and directors of the company, not capable of being assigned to trustees, so that the trustees were not able to derive any assets from that source. The small amount of property owned by the company was seized upon by creditors, so that the trustees found nothing really available towards the discharge of the debts.
So the matter stood for five years, when, on the 4th of December, 1811, a general creditors’ bill was filed in the chancery court of the city of Richmond against the company and the trustees under the deed of assignment, setting forth that the trustees had done nothing in the execution of the trust; that the unpaid subscriptions were included in the assignment, but were not payable until a call should be made by the president and directors, and these had omitted to make such call, and praying that the court would appoint a new trustee, and would itself call on the stockholders to pay, &c.
To this bill the trustees named in the deed of assignment, the company itself, and its president and directors, were made parties. But service of process was not made upon the defendants, and nothing was done under this bill for a period of nine years. On the 14th of August, 1819, an amended bill was filed, and then for the first time, as it is claimed, service of process was had upon the company. Some of the parties voluntarily appeared, some answers were filed, and some defaults taken.
This bill gave a history of the company, and it alleged, among other things, that, by the true construction of the deed of trust, eighty per cent, of the subscriptions to the capital stock which had not been called for by the company passed to the said trustees, but without any power to sue for or collect such subscriptions so uncalled for; and it fur *237 ther charges that “even if said company were now to levy additional assessments upon its stock, it is doubtful whether suit could be brought for them by the trustees under said deed.”
The bill prays for an account; that the court will decree the assignment by the company to be valid, and will itself make a call or assessment upon its stockholders, and appoint a proper person charged with the duty of collecting and disbursing the proceeds of such assessments.
The case was referred to the auditor, and he reported a very large amount of indebtedness to a great number of persons. On the 10th of December, 1880, upon a motion made in the United States circuit court, the receiver appointed in the Reynolds case was discharged, and the bill in that case was finally dismissed. Four days afterwards— that is, on the 14th of December — a decree was rendered by the Chancery Court of Richmond. That court sustained the validity of the assignment by the company to the trustees ; it removed those trustees from their trust and substituted this plaintiff, John Glenn, in their place, and ordered the original trustees to convey and assign to him all property of every description that had been vested in them by deed of assignment. The decree then went on further and ordered that a call or assessment be made on the stockholders, of 30 per cent, of their subscriptions, and directed them to pay the amount to the plaintiff, who was also directed to receive and collect the same by suit or otherwise. In pursuance of that decree, the trustee proceeded to institute a large number of suits in different jurisdictions, and among them were the suits which we are now disposing of.
In the declaration in this suit, the averment is that the defendant’s testator was a subscriber to the capital stock, and undertook and promised to pay the said company, for each and every share so subscribed, the sum of $100, etc. Then it goes on to set up the assignment made by the express company to the trustees, and avers that the defendant’s testator assented and agreed to said deed of trust and thereby became bound, and undertook and promised to pay *238 said trustees for each and every share of stock above stated subscribed for by him, a balance of over $100 on each share of stock, etc. Then it goes on to recite also the decree in the Richmond court and the substitution of the plaintiff for the original trustees.
The declaration was demurred to. Of course this admitted all the facts stated in it, and the demurrer was overruled. The cause was then brought to issue by filing a general issue and several other special pleas, and comes here to be decided in the first instance upon an agreed statement of facts. The ground of the defendant’s alleged liability is a stock subscription signed by her testator in the following form, viz.:
“ We, the undersigned, hereby subscribe the amount and the number of shares opposite our names to the stock of the National Express Company, and bind ourselves, our heirs, etc., to pay said amount in such installments as may be called for by said company, aDd to pay 1 per cent, at the time of subscription.”
It will be observed that no promisee is named in the instrument. The corporation is not in existence at the time of the subscription. It is only after this is complete that the subscribers become a coiporation. A promise cannot be made directly to a person, natural or artificial, not in existence; and therefore the corporation cannot be considered the promisee.
The nature of these subscriptions may be said to be that they are mutual promises by the subscribers to each other, to pay the amounts subscribed; and each subscription is the consideration for the others. But to whom is the payment to be made ? The payee is not expressed, and the payment is certainly not to be made to the other subscribers.
In the absence of any designation, the payee must be understood to be the corporation when it comes into existence. Although a promise cannot be made to a person not in existence, there is no reason why a promise may not be made to a living person to pay money to another person, natural or artificial, when he or it comes into existence. *239 This is one of those cases in which a promise made to one person for the benefit of a third can be enforced by suit by the latter. In fact, in the case of a stock subscription, it ■would be impracticable to enforce it in any other way. -
The statutes of Virginia evidently contemplated the subscription as a debt due to the company. It is provided that on every subscription for shares in any joint stock company (not otherwise provided for), there shall be paid at the time of subscribing, to the commissioners appointed to receive subscriptions, $2 on each share, and the residue thereof as required by the president and directors. Bee 2 R. C., p. 212, sec. 1.
And immediately after the election of president and directors, the money so paid is to be paid by the commissioners who may have received the same, to such person or in such manner as they may require, that is, the president and directors; and in case of failure so to pay, the company may recover the same against the commissioners by warrant or action or motion in lieu of an action. And if the money which the stockholder has to pay on his shares be not paid as required by the president and directors, “it may be recovered by warrant, action or motion as aforesaid,” that is, by the company, in the same way in which the money is to be recovered from the commissioners; or the shares may be sold at auction, etc., and if the sale does not produce enough “ the company may recover against such stockholder whatever may remain unpaid,” etc. The declaration in this case also avers that this was a promise to pay to the company; and the agreed statement of facts' also makes the company the payee.
In some jurisdictions it is held that a subscription does not give a cause of action, but that a default simply involves a forfeiture of the stock. This legislation makes the subscription an actionable agreement, and gives the right of action exclusively to the company.
Views as to the nature of a stock subscription somewhat variant from the foregoing, but leading to the same result, have been expressed in the Massachusetts Supreme Court.
*240 In the cases of Thompson vs. Page, 1 Met., 565, and Ives vs. Sterling, 6 Met., 310, the subscriptions were in terms made payable to such persons as might be thereafter authorized by the corporation to receive them; and the persons so authorized were sustained in actions brought by them.
In Athol Music Hall Co. vs. Carey, 116 Mass., 471, the subscription contract was by the subscribers to and with each other, to associate themselves into a corporation and to pay to the treasurer of said corporation the amount set against their respective names, etc. The action for the unpaid subscription was brought by the corporation. The court said:
“In agreements of this nature, entered into before the organization is formed, or the agent constituted to receive the amounts subscribed, the difficulty is to ascertain the promisee, in whose name alone suit can be brought. The promise of each subscriber, Go and with each other,’ is not a contract capable of being enforced, or intended to operate literally as a contract to be enforced between each subscriber and each other who may have signed previously, or who should signed afterwards, [nor between each subscriber and all the others collectively as individuals. The undertaking is inchoate and incomplete as a contract until the contemplated organization is effected, or the mutual agent constituted to represent the association of individual rights in accepting and acting upon the propositions offered by the several subscriptions. When thus accepted, the promise may be construed to have legal effect according to its purpose and intent, and the practical necessity of the case, to wit, as a contract with the common representative of the several associates. * * *
“ In this agreement the treasurer of the corporation to be established is expressly made payee. The corporation is the aggregate of the several individuals entering into the agreement, one of whose terms was that they should thus associate and confer their individual rights upon the corporation. We are of opinion that the corporation, and the corporation alone, is the proper party to bring an action upon such an agreement. The corresponding agreements *241 of the other subscribers, the organization of the corporation, and the allotment to tire defendant of the shares for which he subscribed, furnish sufficient consideration for his promise to take and pay for those shares. Although his promise was originally voluntary, * * * yet having been accepted and acted on by the party authorized so to do before he attempted to retract it, he has lost the right to revoke. His proposition has become an accepted mutual contract, and is binding upon him as well as upon the corporation.”
We may assume, then, that although the subscribers are the promisees, the payee is the corporation, and it has the same relation to the subscriber as if the promise had been made to the corporation after its legal existence was complete.
This then is simply a debt to the corporation, a chose in action. And the plaintiff, Glenn, is confronted at the outset by the defendant’s objection that his debt could not be ■assigned by the corporation so as to give to any assignee the right to sue the defendant in his own name.
Undoubtedly the common law is so.
The express company could not have made a specific assignment of this subscription with that effect; nor is the legal result changed by embracing this unpaid subscription in a general assignment of all the -assets of the company. It is still, quoad this debt, simply an assignment of a chose in action. Whatever effect is given by statute to an assignment by operation of law,as in bankruptcy, it still remains true that a voluntary assignment, whether general or specific, of a chose in action, can transfer only the equitable interest in it, so as to enable the assignee to sue in the name of the assignor for his use.
How the force of this oljection is felt by the plaintiff’s •counsel is indicated by the ingenious reasoning employed to obviate it.
It is said that this undertaking of the stockholder is not a consummated contract until a certain condition happens, Viz., the call on him for payment by the president and directors ; and when that call took place -in the present case *242 the debt had become the property of another, to. wit, the trustee; and therefore when it became a complete indebtedness it was due to the trustee.
But this assumes the whole question. Whether complete or incomplete, the indebtedness was nothing more than a chose in action; and the very question is how and to what extent it became the property of the assignee, and to this question apply all the considerations just enunciated.
But besides it is an error to speak of the contract as not consummated and complete before the money was payable. At least from the moment when the corporation came into’ being, the subscription was a complete contract. The payment, it is true, was not to be made until called for, but it was none the less a promise to pay to the company when called upon ; and the call for payment could make no change in the parties to the contract.
Perhaps the most ingenious argument is derived from the admitted rule that an assignment of a chose in action, with the right of action on it, may be made if the debtor assents to it and promises to pay to the assignee.
It is attempted to apply this rule to the present case by arguing that every stockholder is presumed to assent to every disposition of the corporate property made by the corporation.
It is not pretended that the defendant’s testator ever specifically assented to the assignment of his indebtedness; but reliance is placed only on the general authority which the law implies from the stockholders to their common agent, the corporation, to use the property of the concern in the conduct and settlement of its business, which, it is claimed, would include the power to assign it in payment of debts.
But this does not advance us a step. Whether the power thus to deal with the property be said to be given by the law or to rest upon an implied assent or authority of the stockholders, it cannot amount to more than an authority to deal with the property in such manner as the subject matter will admit of; in other words, to make such assign *243 tnents as the nature of the property will allow, which, in the case of choses in action would be merely equitable.
In the case of choses in action, consisting of debts due'by strangers, the stockholders could not authorize any other assignment of them than the law permits, as before explained. In the case of debts due by the stockholders themselves, why should a different presumption exist or a different rule apply?
The stockholder occupies a double relation to the company. Qua debtor, be has not promised to pay to the company’s order or to its assignee, but to the company only. Qua stockholder, he cannot be held to have given more than the general authority to the corporation to deal with its property, which I ■ have already mentioned, and which is consistent with the rules of law as to choses in'action.
If we go further than this, we must hold that the mere fact of being a stockholder in a corporation makes his indebtedness a negotiable one, even against the terms of his ■agreement with the company and the intention of the parties. Thus, if a stockholder borrowed money from the company on his sealed bond, the argument would be that as his bond is a part of the assets of the company and he has generally and impliedly assented to the assignment or negotiation of its property, -as it may think best, ergo, his bond may be negotiated like a promissory note.
But this reasoning would not stop at corporations. It would apply equally to partnerships. Each member of a partnership is the agent of all, and all the others are the agents of each, and all or each would have authority to settle debts by the assignment of property of the firm. If, then, one becomes indebted to the firm on an open account, the firm, on the principles before mentioned, could assign ■or negotiate the debt, and so give the assignee a right of action in his own name. In such action the plaintiff, after stating the original indebtedness and its assignment, which would make a demurrable case, would only have to supplement it by an averment that the debtor was a member oi the firm who made the assignment, and his case would be *244 complete. It is hardly necessary to say that this would be a novelty in the law of contracts and actions and pleadings, for which not a semblance of authority could be found.
The decree in the Chancery Court of Richmond cannot affect the question. We have no doubt of the right of the corporation to make a general assignment of all its assets, which would include an equitable assignment of its choses in action, to trustees, for the benefit of creditors without the concurrence of the stockholders. Nor do we doubt the authority of any court, having obtained jurisdiction over the corporation to require it to do what it might do voluntarily, to decree a transfer of its assets to a trustee orto remove a trustee and appoint a new one, and vest in him all the title which the corporation may have given to a former one without having the stockholders before them. Nor do we doubt the power of the court to do what the president aud directors omitted to do, to wit: to make a formal call and assessment on the stockholders on account of their unpaid subscriptions for the benefit of creditors, the result of all which would be that the substituted trustee would have the right, and it would be his duty, to call on the stockholders for the assessment, and, on their refusal to pay, to institute suit against them in the name of the corporation.
This was substantially what the Chancery Court of Richmond ordered the plaintiff to do; that is, “to collect and receive the said call and assessment, and to take such prompt steps to that end, by suit or otherwise, and in such jurisdictions as he may be advised.”
It is not altogether clear that the court meant to decree that he was entitled to sue in his own name or to order him to do so.
If the court is to be so understood, we do not hesitate to say that the decree is void, as to the stockholders, in this respect for want of jurisdiction, because they were not parties to the suit.
Undoubtedly in its relations to third persons, the corporation represents the stockholders, and it is not necessary to make the latter parties to a suit in order to obtain a decree *245 or judgment against the corporation which may be enforced against the tangible corporate property.
But where rights are to be determined as between the corporation and the stockholder, where the latter have an adversary interest, and his property may he affected, it is evident that no decree can bind him in a suit to which he is not personally, instead of by representation, made a party.
For example, his indebtedness to the corporation could not be garnisheed by a creditor by a proceeding in the common law courts or its equivalent in an equity court without serving process on him.
And, while a court might compel the corporation to make such a transfer of his debt as it might make voluntarily without his concurrence, no court could, by force of its own decree alone, convert his indebtedness to the corporation into an indebtedness to some one else without even notifying him. If it could do this, it would have little difficulty in going a step further and make a money decree against him without giving him his day in court.
We have been referred to a number of cases in which suits similar to the present have been sustained in the State and Federal courts.
But the present question does not seem to be discussed in any of the opinions rendered except in Glenn vs. Scott, in the Circuit Court for the Western District of Virginia. In that case the declaration averred the assignment of the subscriptions of the defendant stockholder to the trustees, and that the defendant had assented to it just as in this case.
The case came before the court on a demurrer to the declaration, which admitted the plaintiff’s case — as the present case did in the court below — and the court could do nothing else than render judgment against the defendants. Judge Bond also held the case to be within the code of Virginia of 1813, which, in this respect, only repeals the code of 1849, and provides that:
<c The assignee of any bond, note, or writing not negotia *246 ble, may maintain an action thereon in his own name which the original obligee or payee might have brought/’
If, however, it is attempted to apply that law to the present case, it is seen that a conflict of law arises. By our law, which is the common law, no such action can be maintained, and the question is whether the Virginia code or our common law is to determine the right to sue.
If the code determines the contract right of the parties and operates upon the title it must prevail if this is to be considered a Virginia contract. If it goes only to the remedy, the lex fori must prevail. W e are relieved from any trouble upon this question by the decisions of the court of last resort of Virginia upon the effect of her code.
The following cases were decided in 1857, when the code of 1849 was still in force, and was the law governing the subscriptions in this case.
In Davis vs. Miller, 14 Gratt., 13, the court said:
“The code declares that ‘the assignee of any bond, note or writing, not negotiable, may maintain any action thereon in his own name, which the original obligee or payee might have brought.’ This section is the same in effect with 1 Revised Cbde,-ch. 126, par. 5. It applied only to writings not negotiable, and its only effect is to authorize the assignee of such writings to sue at law in hi» own name. The legal title still remains in the assignor in whose name the suit at law may be brougdit.”
The case of Clarkson vs. Doddridge, 14 Gratt., 42, was an action by certain commissioners in chancery on a bond, for purchase money for property sold by them. The plea was> that, by a subsequent decree, other commissioners had been appointed in their place, so that the bond had been, by the action of the court, assigned to the latter, and the question was whether the action ought not to be brought by them. The court said:
“Was the action properly brought in the names of the' commissioners to whom the bonds were payable ? Or ought it to have brought in the names of the new and substituted commissioners?
*247 “It is a general rule that an action on a contract must be brought in the name of the party in whom the legal interest in such contract is vested. The legislature alone has power to make an exception to this rule. An exception is made by the Code, ch. 144, sec. 14, par. 583, which authorizes the assignee of any bond, note or writing, not negotiable, to maintain thereupon any action in his own name which the original obligee or payee might have brought. The assignee acquires only an equitable right with a capacity, expressly given him by statute, to assert it at law in his own name. But the legal title still remaining in the obligee or payee, a right of action is incident thereto; and the assignee may, at his election, sue at law in his own name or in that of the obligee or payee for his benefit. Garland vs. Richardson, 4 Rand., 266. Another exception seems to be made by the Code, ch. 116, sec. 2, par. 500.
“ It is also a general rule that the legal interest in an obligation for the payment of money is vested in the obligee or his personal representative. The exceptions to this rule also must be derived from the statute law, and are few in number. An exception arises in England under the statute of bankruptcy, which expressly vests the bankrupt’s right of property and of action in his assignees, who may therefore maintain in their own name an action on a bond payable to the bankrupt. A bond payable to a corporation aggregate is not an exception to the rule, though an action thereon must be brought in the name of the corporation, and not of the persons composing it when the bond is executed, or their personal representatives. The corporation itself, and not the persons composing it, is the obligee ; and the case therefore falls within the rule and not the exceptions. A different rule is said to be applicable to a bond payable to a person who is a corporation sole; in which case an action at law upon the bond must, after his death, be brought in the name of his personal representative, and not of his successor. There is a strong instance of this kind in a case very recently decided by the Court of Queen’s Bench, in which it was held that a bond, given to the ordi *248 nary by an-administrator under the statute of distributions* passes, on the ordinary’s death, to his personal representative, and not to his successor. Howley vs. Knight, 14 Adolph. & El., 240; 68 Eng. C. L., 238.
“In the case under consideration, the bonds are payable to Miller and Doddridge, the old commissioners, in whom, therefore, by the very terms of the bonds, and according to the general rule of law before stated, the legal interest in and right of action on the bonds were vested. There is no law in existence which divests this legal interest and right of action. The court of chancery, it is true, was authorized by law to substitute new in place of old commissioners. But the effect of such substitution was not to transfer the legal interest in the bonds from the old to the new commissioners. It only authorized the new commissioners, upon giving the security required by law, to collect the bonds* and to bring suit, if necessary, for the recovery thereof, in the names of the old commissioners. The right of the new commissioners to receive the money does not imply a right to bring an action therefor in their own names. A person may have a right to receive money without any corresponding right to bring an action for it in his own name.
“ This happens whenever a chose in action, not negotiable by the law merchant, and not coming under the provisions-in the Code, ch. 144, sec. 14, is assigned. The assignee has-a right to receive the money, but not to bring an action therefor in his own name. He has, however, an ample remedy.
“He has a right to bring an action at'law in the name of his assignors ; and he will be regarded, even by a court of law, as the substantial plaintiff in the action. The court will protect his rights, and will not permit the nominal plaintiff to receive the money, nor to- release the- debt, nor to dismiss the action. The same principle applies to this case.
“ The circuit court was therefore right in saying that the-present commissioners have a right to sue upon the bonds-in the name of Miller a>nd Doddridge,, the obligees.”
*249 Judge Bond must bave taken the same view, since he rests his opinion on the Code of 1873, which was adopted seven years after these subscriptions were made. He could hardly have held that to operate retrospectivelyon the contract while it clearly could on the remedy.
Apart from the Code of Virginia, it is admitted that the •equitable title to a chose in action can be assigned so that the assignee may institute a suit at common law in the assignor’s name for his use. According to the decisions just referred to, the Code makes no change in the title, but superadds to the remedy just mentioned a right of action by the assignee in his own name.
This, then, clearly relates to the remedy only, and the rule applies which Dr. Wharton lays down in his “Conflict of Laws,” sec. 735, as follows, viz.:
“ Whether an assignee can sue in his own -name is sometimes a technical question, and sometimes one that is essential. When it is technical (i. e., when the point is merely whether the suit is to be brought by A to the use of B, or by B immediately, there being no dispute that the title as between the two is virtually in B), then the lex fori is to decide. It is a mere matter of process. If allowed by the lex fori, the assignee may sue in his own name, although forbidden by the foreign law to which the obligation is subject. If forbidden by the lex fori, the assignee cannot sue in his own name, though permitted to do so by the foreign law to which the obligation is subject.” See, also, to the same effect, Story’s Conflict of Laws, secs. 293, 332 and 473.
And so here we assume that the plaintiff is entitled to sue for the unpaid subscriptions to the extent called for, and the question is whether he shall sue in his own name or in that of the corporation to his use. By the law of this District he must do the latter, and that is the law of this case.
We have not deemed it necessary to express an opinion upon any of the other questions in the case, but judgment must be entered for the defendant.