### SAYRE v. LUCAS.

A note under seal made payable to A. B. or bearer, is not transferable by delivery, so as to enable the bearer to maintain an action on it in his own name.

In an action of debt, in Montgomery Circuit Court, W. Sayre declared against W. B. Lucas, on a specialty, relying on his title there to as bearer. Lucas craved oyer of the instrument and demurred; on the ground that such an instrument was not transferable by delivery, so as to enable the bearer to maintain an action in his own name. The instruments set out on oyer was as follows:

"$354 20. On or before the thirtieth day of December 1825, we or either of us promise to pay Jonathan Battelle and George Wilkinson, agents of the Alabama Company, or bearer, the sum of three hunderd and fifty-four dollars 20-100 for value received. Given under our hands and seals, this sixteenth day of November, in the year 1822.

W. B. LUCAS, [SEAL.]
M. ANDREW, [SEAL.]"

The case was tried at March term 1828, when the demurrer was sustained, and judgment was rendered for the defendant, Judge WHITE presiding.

The error assigned by Sayre, the appellant in this Court is, the decision made on the demurrer.

THORINGTON and GORDON, for the appellant. The instrument was not at common law a writing obligatory, it is an instrument of modern use, and intended by the makers to pass and be negotiable without assignment. Almost every State in the Union, and our State among the rest, has declared all instruments for the payment of money, negotiable. The intention of the makers and the policy of our law should prevail, rather than the antiquated notions and rules of the common law, restraining the negotiability of choses in action, as being injurious to the poor, &c. especially as instruments of this class were not then in use. [a]

GOLDTHWAITE argued for the appellee.

By JUDGE CRENSHAW. The only question to be decided is, whether the bearer, who is not the obligee

[a] 3 Burrows 1355–1516. Douglass 634. 3 Term Rep. 177. 1 Lord Raymond, 180. 1 Burrows 452, 4 Dallas 234. 19 Johnson 399. 7 Cowen 174. 3 John. Cases 259, 2 Cain. 149. 3 Kent Com. 59. 1 Cranch 389. 2 John. 161. Chitty on Bills 64. 3 Barn. and Cress 15. 10 Com. Law Rep. 15. 1 Mason 264. 12 Mass. 447. 1 Coke 3-a. 4 John. 55.

JANUARY 1830.

Sayre
v.
Lucas.

named in the writing obligatory or single bill, can main-- tain an action in his own name, against the obligor?

On this question there has been heretofore a diversity of opinion, and it affords us some satisfaction that a case now occurs in which the practice can be settled by a legal adjudication..

I did believe that it had been settled by the decision in the case of *Howell and Smith v. Hallett,*[a] when this question was directly before the Court. In that case the declaration stated that the defendants, Howell and Smith, made their writing obligatory, payable to William N. Thompson or bearer, and which was transferred by delivery to the plaintiff Hallett. The judgment was reversed on the ground that the declaration concluded in assumpsit, yet some of the Judges were inclined to reverse on the ground that the bearer of a note under seal, not being the obligee or assignee, could not maintain an action in his own name against the obligor. It was then said, that by the law merchant, notes under seal were not negotiable either by indorsement or delivery, though like other choses in action, the assignment of them would be protected in equity, and would operate as a warrant of attorney to the assignee to sue at law in the name of the obligee, and recover to his own use.

If the judgment in the case of *Howell and Smith v. Hallett* was not decisive of the question now under consideration, the reasoning embraced in the opinion has a direct application, and I shall insist on its full benefit. I lay it down then as an incontrovertible proposition, that at common law, no chose in action was assignable, so as to authorize the assignee to sue in his own name; that by the law merchant, which was incorporated into the body of the common law, bills of exchange became negotiable; and by the aid of certain English statutes, inland bills, promissory notes, and checks on banks were also made negotiable; and that those are the only contracts or choses in action which are strictly negotiable at this day in England, and on which the assignee can maintain an action in his own name. These positions are clearly illustrated in Chitty on Bills.[b]

If then, writings obligatory or notes under seal are not negotiable or assignable at the common law, so as to authorize the assignee to maintain an action in his own name against the obligor, if the action be at all maintainable, it must be by virtue of our statute of 1812;[c] but that statute

*a* Minor's Ala. Rep. 102.

*b* Page 4—11.

*c* Laws of Ala. 69.

authorizes them to be assigned by indorsement alone, and not by delivery; they consequently cannot be assigned in any other mode than by indorsement, so as to authorize the assignee to sue in his own name. As illustrative of this position, see 2 Bibb 83.

But it has been contended that a bond or note under seal, payable to bearer, will pass by delivery in the same manner as a bank note payable to bearer. And in support of this proposition, the 3d of Kent's Commentaries[a] is mainly relied on. And to support his doctrine, the learned commentator refers to 10th, Common Law Reports, page 16. That appears to have been the case of a Prussian bond, by which the king of Prussia declared "himself bound to every person who should for the time being be the holder of the bond." The Court determined that this bond was analogous to a bank note payable to bearer, and that the holder of it had power to give title to any person honestly acquiring it. But this decision was solely on the ground that the bond was payable directly to the holder, and also because it was proved at the trial that such bonds were negotiated like exchequer bills.

[a] Page 59.

To maintain the present action, much reliance has also been placed on the case of *Bullard v. Bell*,[b] in which Judge Story says, that "a note payable to bearer passes by mere delivery, and the holder claims merely as bearer; that the note is an original promise by the maker, to pay any person who shall become the bearer; and that a note payable to William Pitt or bearer, is a direct promise to the bearer, whether William Pitt be a real or fictitious person." To such authority as Judge Story, I bow with respectful submission; yet great men may err: Homer, the prince of poets, did sometimes nod, and Judge Story, who is generally correct, may in this instance have extended the doctrine too far. I admit that the analogy is strong, though it is not a case precisely in point. The case before that eminent lawyer was that of a bank note not under seal; and if it had been a writing obligatory or note under seal, I have very little doubt but his opinion would have been different, as the subject matter varied before him.

[b] 1 Mason 252.

Can it with any sort of plausibility be insisted, that a bill single or writing obligatory, the most essential and distinguishing qualities of which are sealing and delivery, possesses in this respect the same negotiable qualities, and is governed by the same rules as bank notes, which

pass current in the commercial world, and answer all the purposes of cash? Surely not. Sealing and delivery are not of the essence of a bank note; if you attach these properties to it, its very name and nature become changed, and it is governed by other rules. If the bond is payable to William Pitt, or bearer, we cannot presume that William Pitt is a fictitious person in an instrument which requires the solemnities of signing, sealing, and delivery, to give it validity. If William Pitt was indeed a person not in being, it would be proper to aver the fact in the declaration, before the plaintiff, as holder of the bond, would be entitled to recover.

It is said, that a writing under seal supposes an obligor, an obligee, and thing contracted for. In the case before us, who was the obligee? I answer Battelle and Wilkinson. The delivery also, which was an essential part of the transaction, was to them. How then, could there afterwards be another delivery to a *subsequent holder by the same obligor?* When Lucas sealed and delivered the instrument to Battelle and Wilkinson, that was a completion of the contract, and he could not become bound to any other person by a subsequent act of the obligee. There was no privity of contract between Lucas and the plaintiff; and though the instrument is payable to Battelle and Wilkinson, or bearer, this only authorized the bearer to sue in the name of Battelle and Wilkinson, and recover to his own use. A majority of the Court are for affirming the judgment.

By JUDGE TAYLOR. The single question in the case is, whether a bill single, given to A. B. or bearer, can be sued on in the name of the bearer, without having been assigned to him by A. B. It has been contended this cannot be done for several reasons:

1. Because such instruments are not negotiable, and this would give them a negotiable character.

2. Because the legal interest is vested in the payee, and it requires an assignment from the payee to the holder, to pass it out of him.

3. Because the Statute passed in December, 1812, "concerning the assignment of bonds, notes, &c." requires that such an instrument shall be assigned, to enable the holder to sue in his own name.

I do not consider it necessary to deny the first position, in order to maintain the doctrine that such an action may

be sustained. Negotiable instruments payable to bearer, do not pass by delivery, so as to vest the holder with a legal interest in them because they are negotiable, nor are they viewed as having been negotiated by the payee; but it is because the promise or undertaking is considered as having been originally made to the holder. Judge Story, in the case of *Bullard v. Bell* [a] says, "a note payable to bearer is often said to be assignable by delivery, but in correct language there is no assignment in the case." It passes by mere delivery, and the holder never takes any title by or through any assignment, but claims merely as bearer. The note is an original promise by the maker, to pay any person who may become the bearer of it; it is therefore payable to any and every person who successively holds the note *bona fide*, not by virtue of any assignment of the promise, but by an original or direct promise, moving from the maker to the bearer." And this doctrine was essential to support the decision made in that case; it was the very point on which the action turned. If the note had been considered as passing from the payee by assignment, the decision must have been different from what it was, because it would then have been necessary, under the act of Congress on that subject, for the proceedings to have shewn that Pitt, the payee, was not a citizen of the same State with the defendant; and the decision was directly the contrary. This opinion of Judge Story, it was stated in the argument, has been supported by the Supreme Court of the United States, in a case reported in 2d Peters, which book is not here. And I do not see how a different result could be arrived at; all the authorities which I have consulted, maintain the same position. Chitty on Bills, page 64, has this strong language: "A bill may be drawn payable to bearer, and in such case it will be transferable by delivery; and a bill or note payble to J. S. or bearer, is in legal effect payable to the bearer, and J. S. is a mere cypher." I consider it clear, under these authorities, except for mere description, that it would be wholly immaterial whether the name of the payee appeared in the declaration or not, and that on a count which did not aver a delivery by the payee to the holder, the note could be given in evidence.

From these authorities and reasons, I arrive at the conclusion that an instrument payable to bearer is considered as executed to the holder; that whether this instru-

JANUARY 1830.

Sayre
v.
Lucas.

a 1 Mason
252.

JANUARY 1830.
Sayre
v.
Lucas.

*a* Page 16.

ment be a bond, note, or bill of exchange, there is no difference: that therefore the holder has the legal interest and may maintain an action in his own name. And in this opinion I consider myself directly sustained by the case of *Gorgier v. Mieville,* reported in 10th Sergeant and Lowber,*a* which was an action by the owner to recover the amount of a bond executed by the King of Prussia, and made payable to the holder, which had been deposited with an agent for certain purposes, who had pledged it for a debt of his own. The Court instructed the jury to find a verdict for the defendants, unless they thought the defendants knew that the bond was not the property of the person who made the pledge. It is true, that in this case it was proved that bonds of this description were sold in the market and passed by delivery from hand to hand, like exchequer bills, and the Judge compared the bond to a negotiable instrument, because such instruments passed by delivery in ordinary dealings; and I think we may fairly presume that such is the case with paper like that on which this suit is founded, though I do not consider this material to the decision.

It is clearly proved by the case last cited, that sealed. instruments are not placed by the decisions on a different footing from promissory notes, so far as this question is involved. But it is insisted, that although a suit might be brought by the holder, if the bill were made payable simply to "bearer," yet when made payable to "A. B. or bearer," it cannot; that in the latter case it is evident the instrument was delivered to a different person from the one who sues, and that it would be contradicting it by a presumption, to infer that the obligation to pay was entered into with any other person.

This is a distinction, so far as authorities have been adduced, and the researches of counsel seem to have been great, never before taken. The case decided by Judge Story was exactly similar to the present. The note was payable to William Pitt or bearer; and such a distinction is excluded by the language of Chitty before quoted, when he says the payee will be considered "a mere cypher."

I think true policy, if the law will admit it without great violence, requires at our hands the same decision in this case, which we would make were the action founded on a promissory note. By our statutes they are placed in almost every instance, and for every purpose, on the same footing; they are the kind of instruments most

usually executed among us, and we probably see ten of
them, for one promissory note.    But what law have we
which permits promissory notes to be passed in this way,
if bills single cannot?    The former are no more negotia-
ble with us, than the latter.    All equitable defences can be
made by the maker of the one as well as the other, when
transferred to a third person; and yet I understand that
while bills single are to be thus restricted, a different rule
is adopted with respect to promissory notes.    According
to Lord Holts opinion, and that of a majority of judges
and lawyers of the present day, nothing but the statute of
Ann gives to promissory notes negotiability; that statute
has no place on our statute book, but our acts of Assem-
bly treat bills single and promissory notes alike.    That
able jurist, Judge Kent, in the third volume of his com-
mentaries, page 59, lays down the doctrine in the same
way in which it is maintained by Judge Story, and adopt-
ed in this opinion.

Having disposed of the two first positions taken by the
defendants counsel together, I come now to examine the
last: which is, that our statute prescribes "assignment"
as the only mode by which an instrument of this kind
can be transferred, so as to vest in the holder a right of
action.

This act declares, "that all bonds, obligations, bills
single, promissory notes, &c. shall and may hereafter be
assigned by indorsement, whether the same be made pay-
able to the order or assigns of the obligee or payee, or
not; and that the assignee shall and may sue in his own
name, &c." It seems to me that a simple question might
put down the objection raised on this statute at once.
Was it a restraining or was it an enabling act?    Certainly
not the former.    The object was to enlarge the powers of
holders of these instruments, except so far as it repealed a
previous statute, making promissory notes negotiable;
and it is against all rule to construe a statute having this
object, in a way which would give it a contrary effect.
But the meaning of the words, "whether the same be
made payable to the order or assigns of the obligee or
payee or not," can very readily be perceived, and full
effect given to them, without any such restraining con-
struction.    By the Law Merchant, bills and notes are not
negotiable, unless the words "or order," be inserted in
them; although a good bill or note, so far as the parties to
it are affected; yet these words are essential to render it

34

Sayre
v.
Lucas.

*a* See Chitty
on bills 66.

negotiable.*a*   The framers of our statute then evidently intended nothing more nor less than that these words, or any tantamount to them, should not be necessary to make an assignment of such instruments valid, and to give the assignee a right of action.

From the best exercise of my judgment, I have formed the opinion that the judgment of the Circuit Court should be reversed.

JUDGE SAFFOLD, concurred with JUDGE TAYLOR.

Judgment affirmed.

JUDGE WHITE not sitting.