## EVANS, ADM'R, v. MATHEWS.

1. Where the Orphans' Court orders the sale of the real estate of an intestate,
upon the petition of the administrator, alledging that the personal estate
was insufficient to pay debts, the administrator, although one of the heirs,
cannot object on error, that the evidence on which the decree of the Or-
phans' Court was founded, was *ex parte;* or that the record does not show
that the heirs residing in the county had personal notice that the petition
was filed; or that the Orphans' Court, instead of appointing a guardian for
one of the heirs, should have required that heir to select one for herself.
These are irregularities that do not show a want of jurisdiction in the pri-
mary Court, and cannot affect the administrator, and if important, he should
have prevented them by conducting the proceeding according to law.

2. The Orphans' Court ordered that an administrator, who made, what was
supposed an imperfect report upon the sale of real estate under its decree,
should be committed, until he made one more perfect; a report was accord-
inly made: *Held,* that the order of commitment, whether erroneous or not,
furnished no ground for the decree which directed the sale.

3. An equitable title may be sold under a decree of the Orphans' Court, and the purchaser will stand in the same predicament, as to title, as the heirs did.

Writ of Error to the Orphans' Court of Wilcox.

THE plaintiff in error filed his petition in the Orphans' Court, as the administrator of Thomas Evans, dec'd, late of Wilcox county, in which he represented that the personal estate of his intestate, was insufficient to pay the intestate's debts; and alledging that he died siezed and possessed of a tract of land, (particularly describ-ed,) situate in that county, which should be sold and made assets for the payment of debts. Petitioner further stated, that the in-testate left three sons, to wit: himself, John Evans and Charles Evans, and two daughters, to wit: Eliza, the wife of James Bat-tle, and Carolina Evans; the three former reside in Wilcox, and the two latter in Mobile; all of whom, with the exception of Car-olina, are of full age. The petition concludes with a prayer, that such proeeedings may be had, as the statute prescribes, in order that the real estate of the decedent may be sold, &c.

The Court made an order, describing the land, reciting the ob-ject for which a sale was asked, and directing that publication be made forty days in a newspaper, requiring all persons interested to appear, &c., and show cause why the prayer of the petition should not be granted.

On the day designated, a decree was rendered, reciting the substance of the petition, the order thereon, stating that Wm. C. Gilmore had been previously appointed a guardian for Carolina Evans, and had filed his answer, denying all the allegations of the petition, and the other heirs had been served with personal notice of the pendency of the proceeding. The decree also af-firms, that the necessity of a sale appeared by proofs, regularly taken and filed, as in Chancery cases. Thereupon, the petitioner was ordered to sell the land in question, on a credit of six months, the purchaser giving bond with good and sufficient surety, &c.; and that he make report, &c.

There is no deposition or other evidence found in the record, but the affidavit of J. P. Fairly, verified before the clerk of the Court; at the foot of which it is stated that it is taken by consent

of all parties interested, subscribed by two or three of the heirs or their representatives.

The land was sold, as required by the decree, and the defendant in error became the purchaser, and executed his bond, payable six months after date, with surety. These facts being reported to the Orphans' Court, they were directed to be recorded, and the petitioner was ordered to make title to the purchaser, when his bond should be paid, &c.

After the decree of sale, the administrator objected to the sale to Mathews, on the ground that the land was a part of a 16th section, of which his intestate became the purchaser, at a sale by the commissioners, that full payment had not been made therefor, or if it had, a patent had not been obtained by the intestate, in his lifetime, or his heirs, since that event. But these objections were overruled by the Court.

BETHEA, for the plaintiff in error, cited Simpson's adm'r v. Simpson, Minor's Rep. 33; 5 Stewt. & P. Rep. 17,

SELLERS, for the defendant, cited Clay's Dig. 525, § 21

COLLIER, C. J.—The supposed irregularities which have been insisted on by the plaintiff in error, may be thus stated: 1. The evidence on which the decree of the Orphans' Court was founded, is *ex parte,* not being assented to by all the heirs. 2. The record does not show that the heirs residing in the county had personal notice that the petition was filed. 3. The first report of a sale, which was made by the administrator, should have been received by the Court, and he should not have been committed until he made a second, on which the final order was made. 4. The intestate, or his heirs, had no title to the land that could be sold, under a decree of the Orphans' Court; and, 5. Instead of appointing a guardian for Carolina Evans, she should have been called on to select one herself.

It must be observed, that the administrator who was the actor in the proceedings in the Orphans' Court, is here complaining, and it is incumbent upon him to show, not only that errors have there been committed, but that they are such as prejudice him, or at least affect the title, which the defendant acquired by his purchase. Assuming this as a postulate, and neither the first, second

or fifth points, conceding them to be well founded in fact, and as abstract legal propositions, indisputable, can avail the plaintiff. We have often held, that if in an application for the sale of the real estate of a decedent, the jurisdiction of the Orphans' Court is established, a decree rendered, and the proceedings consequent thereupon, regular, the purchaser's title will not be divested, although the decree should be reversed.   And the same result will follow, although the heirs may not have been served with a notice of the petition, and the petitioner has failed to comply with the directions of the law, as to matters to be observed subsequent to the sale.   *Further*, the reversal of the decree for error in the record, only entitles the successful party to the purchase money, but the purchaser shall hold the property.   [Wyman, et al. v. Campbell, et al. 6 Porter's Rep. 219; Perkins Ex'rs. et al. v. Winter's adm'rx, et al. 7 Ala. Rep. 855.]   This being the case, the defendant has no interest in litigating these points ; no matter what may be the judgment of the law upon them, the plaintiff can recover nothing of him, or defeat his title, unless the jurisdiction of the Orphans' Court, could be successfully assailed.   This has not been attempted, and our impression, from an inspection of the record, is, that such an effort would be vain.

It might also be answered, to the objections we are considering, that if they are errors, they are attributable to the plaintiff— it was his duty to have prevented them, by conducting the proceedings with regularity, and he cannot be permitted to urge them, to annul a decree rendered at his own instance·

If it were granted that the report first made by the plaintiff, correctly stated the facts, and authorized the final order, and that his commitment until he made a second, was oppressive, and irregular, and still it would furnish no ground for a reversal of the *decree.*   It was a matter occurring *post factum*, and if the plaintiff objected to it, he should have interposed an objection while it was *in fieri*.   As the result was legal, if the process by which it was obtained were set aside, the purchaser would still be secure in his title.

In respect to the fourth point made by the plaintiff in error, without stopping to inquire, whether, if available under any circumstances, he could urge it, we need only remark that in Perkins' Ex. et al. v. Winter's Adm'rx, et al., (supra,) we held, an equitable title could be sold under a decree of the Orphans' Court, and the

purchaser would stand in the same predicament as to the title, as the heirs did. We are, however, by no means certain, that the title of the intestate was not legal.

This view is decisive of the case, and the decree of the Orphans' Court, is affirmed, so far as the writ of error in the present case could present it for revision.

In the transcript, there is a copy of a bond executed by all the heirs of the intestate, including the administrator, reciting that the writ of error was sued out by them, and conditioned for its prosecution, &c. If the writ of error was such as the bond recites, the result would be such as announced, and it is therefore unnecessary to inquire whether the writ might not be amended so as to make it conform to the bond.