## BROWN v. CHAMBERS, ET AL.

12   697
112   543
12   697
121   445

1. A bond in the penal sum of $10,000, by which B bound himself, on condition that D would establish the claim of B, to a right of entry under the pre-emption laws of the United States, and pay to the United States the purchase money thereof, he would deliver to D, his heirs, and assigns, a good and sufficient deed of all his right, and title to one half of said lands —is not such an estate, or interest in land in D, though the condition of the bond has been performed, as can be sold by order of the orphans' court, at the instance of the representatives of D, so as to vest in the purchaser the title of D, or to enable the commissioners appointed by the orphans' court, to assign the bond to the purchaser.

2. Such a bond is assignable under the act of 1828, and the assignee may maintain an action thereon in his own name, by showing a performance of the condition by the obligee. Whether, after the death of the obligee, the heir, or personal representative is entitled to the bond, *quere.*

3. A letter written by one professing to be a commissioner in the general land office, is not, without further proof, admissible as an instrument of evidence.

4. A plea of set-off cannot be interposed to a suit on a bond for unliquidated damages; but by taking issue on such a plea, its sufficiency is admitted.

Writ of Error to the County Court of Mobile.

This was an action of covenant at the suit of the defendants in error. The declaration is on a bond dated the 25th December, 1834, by which the defendant below acknowledged that he was indebted to Andrew Dexter in the sum of $10,000; *conditioned,* that, whereas the defendant, as a joint settler with one William Reynolds, was entitled under the act of Congress of 1830, to the pre-emption of a certain quarter section of land within the district of the land office at St. Stephens, and to the pre-emption by way of float of eighty acres more of the public land in some other part of that district: the defendant applied to locate the eighty acre claim on the fraction marked *A* of section twenty-seven, township four, and range one, west, south of the thirty-first degree of north latitude, designated on the plat as containing 85 76-100 acres, and offered at the same time to pay the United States the amount required for the purchase of the original tract, and for said fraction; "but owing to different causes, the defendant was not allowed to make the said location, as aforesaid." *Further,* "*whereas,* the said Dexter has notwithstanding, undertaken to endeavor to establish the said claim to the said fraction, and agreed to pay the United States whatever may be in such case necessary for the purchase of the original tract of land and the said fraction." It is also recited that the defendant "has, in consideration of the performance of the said conditions, agreed to deliver, or cause to be delivered to the said Dexter, his heirs and assigns, a good and sufficient deed of all the right and claim" of him (de-

fendant) in and unto one undivided half part of said fraction of land.   Now, in case the defendant should perform the agreement aforesaid, his said bond is to be void and of no effect.

Plaintiffs aver, that during the lifetime of the said Dexter, he fully established the claim of the defendant to the parcels of land above referred to, and advanced the money agreed by him to be advanced; "and did perform all the things specified to be done.   *Further*, that after the death of "Andrew Dexter, Andrew Alfred Dexter was duly appointed the administrator of his estate, who indorsed, assigned and delivered said bond to the plaintiffs."   It is also averred, that after the death of "Andrew Dexter, that Andrew A. Dexter and Sophia Dexter, his heirs at law, did assign, transfer and set apart to the said plaintiffs the said writing obligatory."   *Further*, that the said administrator did in the county court of Mobile, make application for the sale of the said lands, for the payment of the debts of his intestate, and an order was accordingly made directing the sale of the same by commissioners.   A sale thereupon took place, at which the plaintiffs became the purchasers, and by the sanction of the county court, received an assignment of the aforesaid bond from the commissioners—all which appears of record in that court.

The declaration then concludes, that the plaintiffs are the assignees of the bond; that since the assignment, they have demanded of the defendant the fulfilment of his covenant, and that previous thereto, the administrator and heirs of Andrew Dexter made a similar demand; but, &c.

There was a demurrer by the defendant, which being overruled, he pleaded—1. That Andrew Dexter did not establish the title of the defendant to the lands referred to in the plaintiff's declaration, nor pay to the United States, the money necessary to perfect the defendant's title to the same; nor have his heirs, executors, &c. done so since his death.   2. That after the execution of the bond, Andrew Dexter refused and declined to establish the title of the defendant to the fraction of land therein described, and to advance the money required by the United States in payment of the lands to which the contract relates.   In consequence of such refusal, the defendant was compelled to employ John Forsyth, junior,

to establish his claim and title to the same ; and the purchase money being the, sum of $500, was advanced and paid by the defendant, and not by the said Dexter. 3. That defendant recovered a judgment against the administrator of Andrew Dexter, in the county court of Mobile, on the 19th March, 1839, for the sum of $1,163 56, while the bond was in the administrator's possession as the representative of his intestate—this judgment the defendant offered to set off against the plaintiff's cause of action.

The cause was submitted to a jury, and the defendant excepted to the ruling of the court. It is shown by the bill of exceptions—1. That the plaintiffs, to make out their case, offered the proceedings in the orphans' court, to which the defendant objected, because they did not vest in the plaintiff a right to maintain the present action ; but his objection was overruled, and thereupon he excepted. 2. The plaintiffs next adduced a letter, dated " General Land Office, 7th Sept. 1836," addressed to "A. Dexter, Esq. Mobile, Ala." signed " Ethan A. Brown, commissioner." This letter states that the writer had that day advised the land officers at St. Stephens to permit the entries of John M. Brown and William Reynolds, of the land claimed by them, under the act of 1830, and by floats, &c. It was proved by a witness that he had seen the signature of the writer to official papers at the land office at Washington and other land offices, and from the resemblance, believed the signature to be genuine. The defendant objected to the reading of the letter, but his objection was overruled, and he excepted. 3. The plaintiffs also offered the deposition of Andrew Alfred Dexter, to which the defendant objected, on the ground that the witness was incompetent ; the objection was overruled, and the defendant again excepted.

The plaintiffs read to the jury the patent of the United States for the lands, dated in 1839, which was produced by the defendant on a notice from the plaintiff calling for it.

4. The defendant then offered to show, that at the time of the sale, and other transfers by which the plaintiffs claimed, the lands referred to in the bonds were held adversely by persons claiming pre-emptions ; and that these persons so held until they were ousted by the defendants in actions of

ejectment under his patent—this evidence was objected to by the plaintiffs, the objection sustained, and thereupon defendant excepted. 5. The defendant next adduced as evidence under his plea of set-off, a judgment in an action by the defendant against Andrew Dexter in his life-time, which was recovered against his administrator before the date of any of the transfers under which the plaintiffs claimed a right of action—this judgment is wholly unpaid; but upon the plaintiffs' objection, this evidence was rejected, and the defendant again excepted.

The court charged the jury—1. That the purchase by the plaintiffs, under the proceedings in the orphans' court not only vested in them the interest in the lands sold, but also the interest in the bond for the purpose of this suit—the sale operating as an assignment, and no adverse possession could defeat their interest. 2. That the construction of the letter read by the plaintiffs to the jury, was, that the title of the defendant had been established, and was a fulfilment of Dexter's undertaking. To all which the defendant excepted, and prayed the court to charge the jury—1. That Dexter was bound under his contract to procure from the government such acknowledgment, or action, as vested in Brown a title to the premises. 2. That it was necessary for the plaintiffs to prove a demand for title. These several charges were refused, and the defendant excepted. A verdict was returned for the plaintiffs, and judgment was thereon rendered.

P. Phillips, for the plaintiff in error made the following points: 1. The assignee of a personal contract cannot maintain an action thereon in his own name, although the contract stipulate for the performance of a duty, by or in favor of a party or his assigns, and be assigned by the consent of him on whom the duty devolves. [3 Hill's Rep. 88; 14 Mass. Rep. 107.] Such an action is not maintainable under the statute, which extends to bonds for the payment of money, or other thing—gives an action against the indorser, and allows payments, discounts and sets off against an assignee, if the obligor, or maker, possessed them previous to notice of the assignment. [Clay's Dig. 381, § 6; 1 and 2 Ohio Rep. 400.]

2. Covenant will not lie on the *condition* of a bond, but it must be on the bond itself, and the breach alledged should be the non-payment of the penalty. [2 Bac. Ab. 63, note A; 1 Paine's C. C. Rep. 422; 4 Ohio R. 214.]

3. If the decree of the orphans' court could authorize such a sale of the land as invested the purchaser with a legal title to the bond, the sale required confirmation to make it effectual, and there is no proof that this was ever done. [5 Ala. Rep. 324; Id. 475.]

4. There was no such title to the lands in Dexter as the orphans' court could order to be sold—he had neither title, possession, or the right of possession—at most his representatives could have sought a specific performance of his contract in equity.

5. The signature of the commissioner of the general land office was not proved, so as to have authorized the admission of it as evidence; nor did it prove that the title had been established pursuant to the covenant. [1 Greenl. Ev. 612; 2 Ala. Rep. 703.] It was addressed to Dexter and not to the officer at St. Stephens.

6. Dexter was an incompetent witness, and his deposition should have been excluded—he shows that Williams's name was used for witnesses benefit, and the latter would of course be liable to him for the costs. [1 Greecl. Ev. 428; 3 Johns. Ch. R. 612; 8 Ala. R. 846; Clay's Dig. 381, § 6.]

J. A. CAMPBELL, for the defendants in error, insisted—1. That the bond was for the performance of a duty, if not for the payment of money, or other thing, and is therefore assignable under the acts of 1812 and 1828. [Clay's Dig. 381, 383, § 6, 12.] Plaintiff's claim, as assignees of the administrator, heirs, and under the sale in virtue of the decree of the orphans' court—it may not require all these to pass the legal title, but certainly they are sufficient for the purpose.

2. The orphans' court may order the sale of an inchoate title to lands—the averment of the sale—its confirmation, &c. by that court is alledged, and it is fully sustained by the proof. [7 Ala. 855.] The transfer of the heirs conveys the title and authorizes a suit. [1 Wms. Ex'rs, 519; 4 M. & S. Rep. 53.]

3. Covenant will lie on the bond declared on, and the breach is well assigned. [2 Ala. Rep. 425; 4 Id. 212.]

4. The signature of the commissioner, E. A. Brown, was sufficiently proved to have authorized the admission of the latter—the witness became acquainted with the hand-writing of the commissioner, by having seen authentic official documents written or signed by him. [3 Phil. Ev. C. & H's notes, 1324.] To the competency of this evidence no objection was taken—but its admission was resisted, because its genuineness was not shown. The patent shows that the title was completed, and if necessary the letter could be used to show the exertions of Dexter, though it may be inferred that there was other evidence on the point. It may be that the letter was superfluous, yet being before the jury, the court might have told the jury what was its proper interpretation and effect.

5. Dexter, the administrator had no interest in the suit, and was not a party to the record—all that he had was an expectation, and that was released—as for the costs, he could not have been charged with them, and could not claim a share of the proceeds. His testimony did not relate to any point material in the case.

5. The bond descended to the obligor's heirs, while the debt due by him to the defendant, was payable by his administrator, from the personal assets. By the sale of the lands the proceeds were placed under the control of the orphans' court, and the defendant may go there and claim his proper proportion. The present action is brought for the recovery of unliquidated damages, and in such case a set-off is not admissible. [7 Ala. Rep. 359.] The counsel for the plaintiff in error does not notice the refusal to charge that a demand was necessary previous to the institution of the suit—under the pleadings, however, the refusal was proper.

COLLIER, C. J.—The act of 1822, authorizes an executor or administrator, who has not power by the will to sell real estate for the purpose of paying debts, or to make more equal distribution among the heirs, devisees or legatees, to file a petition in the orphans' court of the county in which letters of administration, or letters testamentary have been granted,

setting forth that the estate of his testator or intestate is not suffi-
cient for the payment of the just debts of such testator or intes-
tate; or that the real estate of such testator or intestate cannot be
equally, fairly and beneficially divided among the heirs or de-
visees of such testator or intestate without a sale of the real
estate, setting out and particularly describing in such petition
the estate proposed to be sold, and the names of the heirs or
devisees of the same—which are of age, and which are in-
fants or *femes covert*. [Clay's Dig. 224, § 16.] Under this
statute, it has been decided that an equitable title could be
sold by a decree of the orphans' court, and the purchaser
would stand in the same predicament in respect to the title,
as the heirs did ; and that a mortgagor's interest, under an
order of that court, would confer upon the purchaser the right
to redeem. [Doe, ex dem. Duval's heirs, v. McLoskey, 1
Ala. Rep. N. S. 734 ; Evans' adm'r v. Mathews, 8 Ala. Rep.
99.] It is insisted that these decisions authorized the pro-
ceedings and decree in the orphans' court, for the sale of a
moiety of the lands described in the bond, and that the com-
missioners appointed to execute the decree might with the
subsequent sanction of the court, indorse the bond, and thus
invest the purchaser with the right to prosecute not only
equitable, but legal remedies on it. The citations certainly
do not support this argument, and we think it cannot be
maintained. Conceding that the contract evidenced by the
bond, is consistent with the spirit and policy of the pre-emp-
tion laws, and the obligee performed every stipulation requir-
ed of him, so as to have authorized him to enforce a specific
performance in equity, and still it does not follow that the
orphans' court could invest the commissioners with authority
to make such an assignment of the bond as would entitle the
assignees to sue at law in their own names, and alledge as a
breach the failure to convey a moiety of the lands to him. If
the sale effected any thing, it was nothing more than to place
the assignee, in respect to the lands in the same situation as
the obligee stood ; and as the obligee would have been com-
pelled to go into equity to perfect his title, the same remedy
would have been appropriate for the purchaser of his interest.
The decree, if conformable to law, directed the commissioners
to sell the *land*—not the *bond* under which the obligee, in his

lifetime, and his heirs and administrators after his death, claim-
ed a right in equity to a moiety. This is perfectly clear, not on-
ly from the section of the act cited, but from several sections
which follow it. The fourth section enacts, that the "court
shall not decree or order a sale of the real estate" described in
the petition, where the allegations are denied ; unless satisfied
by proof, &c. ; and commissioners shall be appointed, in the
order or decree, with directions to sell the estate, &c. By
the sixth, it is provided, that upon the coming in of the re-
port of the commissioners, the court shall render a final de-
cree in the cause ; " and if the terms of the sale shall have
been complied with by the purchaser of the estate, the com-
missioners shall be directed, by such final decree, to convey
the estate sold, to the purchaser." Again : the seventh sec-
tion declares that "whenever the court shall. upon a final hear-
ing of the cause, decide that the estate shall not be sold, the judge
shall dismiss the petition," &c. [Clay's Dig. 225, § 19, 21,
22.] These several provisions show, that the court acts up-
on the " real estate described in the petition, and formally
conveys through the agency of commissioners, the title which
the deceased had therein, and that commissioners cannot as-
sign a penal bond which stipulates to make a title upon cer-
tain conditions, so as to authorize the assignee to sue on it at
law. Such a power cannot be legitimately conferred ; and
in fact the decree found in the record shows, that it was the
interest which the intestate died possessed of, in the lands
described in the condition of the bond. The confirmation of
an assignment, if made by the court, as alledged, was *coram
non judice*—it was something beyond and independent of the
decree of a sale, and could have no legal effect. A bond to
make a title, upon the payment of money, or the performance
of some other duty, is, in no sense, a *covenant running with
the land,* upon which the purchaser of the obligee's interest
in the land may maintain an action in his own name. Whe-
ther, in a case circumstanced as the present, it would be al-
lowable for the purchaser to sue in the name of the adminis-
trator or heirs for his own use, is a question which we need
not, now specially consider. However this may be, we have
seen that the intestate had no such estate in the land as the
orphans' court could order to be sold, and that under the de-

cree the commissioners could not assign the bond to the purchaser.

We come now to consider whether the bond declared on, can be transferred by indorsement, so as to pass to the assignee a legal title therein. The act of 1812, " concerning the assignment of bonds, notes, &c,, and for other purposes," enacts, that " All bonds, obligations, bills single, promissory notes, and all other writings for the payment of money, or any other thing, may be assigned by indorsement, whether the same be made payable to the order or assigns of the obligee or payee or not; and the assignee may sue in his own name, and maintain any action which the obligee or payee might have maintained thereon previous to assignment," &c. [Clay's Dig. 381, § 6.] The act of 1828, " defining the liability of indorsers, and for other purposes," after declaring that the remedy on foreign and inland bills of exchange, and promissory notes, payable in bank, shall be governed by the rules of the law merchant, as to days of grace, &c., provides, that " all other contracts in writing, for the payment of money or property, or performance of any duty of whatever nature, shall be assignable as heretofore, and the assignee may maintain such suit thereon, as the obligee or payee could have done, whether it be debt, covenant, or assumpsit. [Clay's Dig. 383, § 11, 12.]

It is well settled that bonds cannot be assigned at common law, so as to entitle the assignee to an action in his own name thereon. But courts of law will recognize the assignment of a bond, so as to refuse to give effect to a subsequent release of the debt by the original obligee. The assignment, it has been held, amounts to a contract that the assignee shall receive the money to his own use, entitles him to sue in the assignor's name, and is a sufficient consideration for a promise by the obligor to pay the assignee. [1 Bos. & P. Rep. 447; 2 Black. Rep. 1269; 1 Pick. Rep. 504; 1 Stew. & P. Rep. 60; 4 Rand. Rep. 266; 7 Conn. Rep. 399; 15 Mass. Rep. 485; 2 Greenl. Rep. 510; 2 Stew. Rep. 259; 2 Hals. Rep. 94; 3 G. & Johns. Rep. 214; 3 Hill's Rep. 88; 5 Pet. Rep. 599.] The assignee of a bond takes it at his peril, and stands in the place of the obligee, so as to let in every defence which the obligor had against the obligee at the time of notice of

assignment.   [1 Dall. Rep. 23, 444; 4 Rand. Rep. 266; 5 Binn. Rep. 232; 4 Serg. & R. Rep. 177; 9 Id. 141; 1 Lord Raym. 683.]

By a statute of Virginia, passed in 1748, it is enacted that " an action of debt may be maintained upon a note or writing, by which the person signing the same shall oblige himself to pay a sum of money or quantity of tobacco to another." In 1795, an act of the same State provided that "assignments of all bonds, bills and promissory notes, and other writings obligatory whatsoever, shall be valid ; and an assignee of any such may thereupon maintain any action in his own name, which the original obligee or payee might have brought, but shall allow all such discounts, not only against himself, but against the assignor before notice of the assignment was given to the defendant."   [1 Rev. Code of Va. 484, § 4, 5.] In Henderson, et al. v. Hepburn, et al. 2 Call's Rep. 232, it was said that the former act did not embrace a bond with a collateral condition ; that whenever a bond is made with a smaller specific sum mentioned in the defeasance, or the bond is single, so that judgment may be given for that sum with interest, and for damages to be ascertained by a jury; there it is not necessary to assign particular breaches, and the bond will be considered one for the payment of money within the meaning of the statute.   But if the principal sum for which the judgment is to be rendered is unascertained, and the intervention of a jury is necessary to adjust the damages; or if a special assignment of breaches is requisite to inform the defendant for what cause the action is brought, then the bond does not come within the act, so as to entitle the assignee to sue in his own name.   [See also Lewis v. Harwood, 6 Cranch's Rep. 82; Craig v. Craig, 1 Call's Rep. 483.]   In Meredith v. Duval, 1 Munf. Rep. 76, it was held that an assignment made after the statute of 1795, by which bonds with collateral conditions were made assignable, is good, though the bond was dated before the act.

Under the statute of Kentucky, which enacts that all bonds, bills and promissory notes, whether for money or property, shall be assignable, and the assignee may sue for the same, in the same manner the original obligee or payee could do, it has been decided that a bond with a condition for the

conveyance of land is assignable. [Conn v. Jones, Hard. R. 8; Sloan v. Griffith, Ib.] The question again arose in New-fong v. Wells, Id. 561, and the court said, that "property is *nomen generalissimum,* including every visible subject of ownership; and although, upon comparing the act of 1798 with that of 1796, some doubt remains whether the legislative intention in enacting that of 1798, extended beyond bonds for personal property, passing by delivery; yet that the construction shall be settled, is of more importance than what it shall be. The construction given by the decision of Conn v. Jones, upon solemn argument, appears best adapted to the situation of our country, and will not be now disturbed." But in Bowman v. Frowman, 2 Bibb's Rep. 233, it was held that there was no rule in the construction of statutes, that will justify the extension of the Kentucky act to articles of agreement containing reciprocal covenants , for by designating the kinds of contracts that may be assigned, it " negatives the idea that the legislature intended to make other instruments of a different species from those mentioned, assignable. Con-sequently, it was adjudged that an article of agreement *for the conveyance of land,* by one party, and the payment of a price therefor by the other, is not assignable, under the statute. [See also, Craig v. Miller, 3 Bibb's Rep. 443.] So, if part of a note or bond is to be discharged in *personal servi-ces,* it is not assignable under the statute. [Hulbert v. Dearing, 4 Litt. Rep. 9; Henry v. Hughes, 1 J. J. Marsh. R. 454.] Nor does an obligation to pay money, and to do other acts, which are neither a payment of money or property, come within the Kentucky statute; neither does it embrace a bond to collect money and pay it over to the obligee. ]Force v. Thompson, 2 Litt. Rep. 166.]

In Missouri there is a statute substantially the same, if not identical with that of Kentucky; under which it has been held that a note for a certain sum, payable in work, is not assignable, so as to authorize the assignee to sue in his own name. [Bothick's Adm'r v. Purdy, 5 Miss. Rep. 83; Able & Isbell v. Shields, et al. 7 Id. 120; J. & P. Miller v. Newman & Paulsel, 8 Id. 355.]

We think it perfectly clear that the bond declared on, is not embraced by the act of 1812. The terms of that enact-

Brown v. Chambers, et al.

ment are, that *all bonds, &c. and all other writings for the payment of money, or any other thing, may be assigned, &c.* True, in technical parlance, thing is a word of extensive meaning, including not only lands, tenements, &c., but personal or moveable property ; yet it may well be questioned whether the term thing, where it occurs in the statute, would not be restricted in its operation to things moveable, even if there were no accompanying words of limitation. The intention of the act, and the subject matter would perhaps indicate the propriety of thus restricting it. But if it be doubtful whether this conclusion can be supported by this general mode of reasoning, and by reference to extraneous facts, we think it obvious that the term *payment* in connection with *money or other thing,* shows that by thing we are to understand something transmissible from place to place; that is personal property which could be removed at the pleasure of the owner. In neither technical nor popular phrase do we speak of bonds or other writings for the payment of land ; these usually stipulate for the conveyance of the title. The statute of Kentucky, which was held to embrace bonds, with a condition to convey lands, employs terms of much broader import than our act of 1812, yet in Newfong v. Wells, the court of appeals of that State intimate a doubt whether their statute had not been too greatly extended by construction, although it was thought safer to follow than depart from precedent ; and in Bowman v. Frowman. it was held, that it could not be extended to articles of agreement containing reciprocal covenants. Consequently, a contract for the *conveyance of land,* by one party, and *the payment of a stipulated price* therefor, by the other, is not assignable, under the statute of that State.

It must be admitted, that our act of 1828, employs terms of more comprehensive import than are used in that of 1812. While the latter is limited to *bonds and all other writings for the payment of money, or any other thing,* the former embraces *all contracts in writing for the payment of money, or property, or performance of any duty of whatever nature.* The direction that these shall be assignable as they previously were, instead of restricting the act to such writings as were

within the statute of 1812, is only intended to indicate the mode of transfer, viz : by indorsement.

So the act of 1828 is much broader than the Kentucky statute, which only includes *bonds, bills and promissory notes for money or property,* and is as comprehensive as the Virginia act of 1795 ; which in terms, and by construction, extends to *all bonds, bills, and promissory notes, and other writings obligatory ;* and of course to bonds with reciprocal covenants, which stipulate to make titles to the land to the obligee. Upon the first presentation of this case, the question presented itself, whether the general terms " performance of any duty of whatever nature," should not be limited to contracts in writing, where the undertaking was absolute and unconditional, although the duty was to be performed *in futuro.* But further reflection and examination has satisfied us, that the assignee of a bond with *reciprocal covenants* may maintain an action against the obligor in his own name, upon showing that the undertaking of the latter has become absolute by the performance of the conditions which are incumbent on the obligee. What has been already said in connection with the statutes of several of our sister States upon this subject, will suffice to show the reasoning by which this conclusion is attained, and render it unnecessary here to reiterate the argument. [See Burt v. Henry, 10 Ala. R. 874.]

In the transcript, we find a bond such as that declared on, set out *in extenso*, together with a receipt purporting to have been made by the defendant, on the 20th April, 1836, for two hundred dollars, paid by the intestate on account of his obligation to pay for the lands to which the defendant and intestate are entitled by pre-emption, in the name of the former, and William Reynolds. In this receipt it is stated that the defendant is to advance the remaining two hundred dollars, and the intestate is to repay him with interest in ninety days after the date of the above receipt. Immediately following the bond and receipt, there is a writing subscribed with the names of the commissioners appointed by the orphans' court to sell these lands, and also with the name of the administrator in his representative character ; which writing is as follows: " Mobile, November 7th, 1840. The land for which the foregoing bond was given, and also that to

which the annexed receipt refers, having been purchased by John A. Chambers, and William W. Williams, at a sale of the interest of the late Andrew Dexter therein, the foregoing bond and the annexed receipt are hereby assigned to them."

· Conceding that an administrator may transfer the choses in action of his intestate's estate, in payment of his debts, or in the legitimate execution of his trust, and it may perhaps be questioned, whether, by joining the commissioners in the assignment of a bond, which we have seen they could not make, with the view of consummating a sale of land which the orphans' court had not the power to order, the assignee became vested with a legal title to the bond. But it is doubtful whether these papers can be considered a part of the record, and we therefore decline furnishing a solution to the question; the more especially as the cause may here be disposed of without a decision of the point. There is nothing in the transcript to indicate that the bond was ever assigned by the heirs of the obligee. We have not been able to find any decision in which the question arose, whether the heir or personal representative was entitled to a bond in favor of a deceased person, conditioned to make titles to land. The cases most analagous are those upon covenants in respect to the realty, in which it is held, that if a breach occur in the lifetime of the obligee, the executor or administrator must sue, if after his death, the heir must sue. [See 2 Bibb Rep. 170, 180; 1 Lomax Ex. 286 to 293; 2 Id. 360, *et seq.* and citations in notes.]

It may be assumed as a postulate, that where the demand offered as a set off, is a debt of the assignor, and would not be admissible if the action were brought by him, it cannot be received where the suit is in the name of the assignee. This conclusion is supported by the act of 1812, and is the result of the general analogies of the law. [Clay's Dig. 381, § 6.]

It is provided by our statute, that "in all cases where there are or shall be mutual debts" subsisting between the plaintiff and defendant, or if either party sue or be sued, as executor or administrator, where there are mutual debts subsisting between the testator or intestate, and either party, one debt may be set off against the other," &c. [Clay's Dig. 338, § 141.] This enactment, it has been held, is a substantial

copy of the two acts of 2d and 8th George II, on the same
subject; under these statutes it has been decided that unliqui-
dated damages cannot be the subject of a set off, although se-
cured by a bond with a penalty ; but a penal bond is only
admissible in such cases, where it stipulates for the payment
of a *certain sum of money.* [Dunn, use, &c. v. White &
McCurdy, 1 Ala. Rep. 645.] And in McCord v. Williams
and Love, 2 Ala. Rep. 71, it was determined that the damages
resulting from the breach of a contract, are unliquidated,
when there is no criterion provided by the parties, or by the
law operating on the contract, by which to ascertain the
amount of damages.

In Wilmot v. Hurd, 11 Wend. Rep. 584, it was decided
that a set-off was not allowable where an action was brought
for the breach of a warranty in the sale of a horse; that a set-
off can only be allowed in actions founded upon demands,
which could themselves be the subject of a set-off. [See
Burgess v. Tucker, 5 Johns. Rep. 105.] So a set-off cannot
be pleaded either in this country or in England for a mo-
neyed demand, the amount of which is not referable to some
certain standard. [Roebuck v. Tennis, 5 Monr. Rep. 82;
see also Sickles v. Fort, 15 Wend. Rep. 559; Driggs v.
Rockwell, 11 Wend. Rep. 504; Littell v. Shockley, 4 J. J.
Marsh. Rep. 245.]

The sum which is demandable for the breach of the cove-
nant contained in the condition of the bond is uncertain, and
is to be ascertained by extrinsic proof, and according to the
authorities cited, the defendant's judgment, though unobjec-
tionable in itself as a set-off in a proper case, could not be al-
lowed as such, in the cause before us, if the objection to its
allowance had been regularly made in the court below. But
it does not appear that the plea of set-off was demurred to,
and we infer from what is said in the bill of exceptions, that
it was submitted to the jury as the basis of one of the issues.
Assuming this to be so, if the plea correctly described the
judgment as to its amount, time when rendered, &c. the
plaintiffs could not object to its admission; for by consent-
ing to go to the jury with an issue upon the plea, they ad-
mitted its sufficiency, and waived in advance an objection to
the record, by which it could be sustained.

Brown v. Chambers, et al.

In respect to the first charge to the jury, we have already seen that it cannot be supported. The sale of the land under the decree of the orphans' court was ineffectual to pass the legal title to the bond to the purchasers; and the unauthorized assignment of it by the commissioners does not appear to have been confirmed by that court, even if it had been competent to validate it by its sanction.

Without stopping to inquire whether the letter of the commissioner of the general land office, addressed to the intestate, was admissible, we think the construction placed upon it clearly indefensible. This letter is dated the 7th September, 1836, and informs the intestate that the writer had informed the land officers at St. Stephens to permit the entries of John M. Brown and William Reynolds, of the land claimed by them under the act of 1830 and by floats; and to refund to Messrs. Gager & Street the amount erroneously paid by them. For his reasons for that decision, he refers to his communication to the land officers of that date. Giving to this paper the most extensive meaning of which it is susceptible, and it does not appear that the confirmation of the claims referred to, was induced by any agency of the intestate, but merely that they had been confirmed. Nor does it establish the fulfilment by him of the stipulations of his contract, as evidenced by the condition of the bond. But conceding that the meaning of the letter was rightly interpreted, it may be asked, whether it is entitled to any influence as an instrument of evidence? It is unofficial, and as an admission, we think must be regarded as *res inter alios*, and is obnoxious to the objection that the facts it narrates are not duly verified by the oath of the writer.

Other points are raised upon the record, and have been discussed at the bar; but the view we have taken of the questions considered, is sufficient to show that the law was incorrectly ruled by the circuit court, and may perhaps serve as a guide to the ultimate decision of the cause. The judgment is reversed, and the cause remanded.