# Cochran & Ramsey *v.* Adler *et al.*

*Bill to Foreclose Mortgage Executed by the Former Holder of Bond for Titles after its Transfer.*

1. *Bond for titles; holder of, in equity owner of land, when.*—As between the holder of a bond for titles and the maker of it the former, so long as he holds the bond, is regarded in a court of equity as the owner of the land embraced therein.

2. *Transferree of a bond for titles, acquires what.*—The transferree of a bond for titles acquires by the transfer the same rights, no more and no less, that the original holder had.

3. *Same; not required to be recorded.*—A bond for titles and the writing assigning it convey no estate either legal or equitable, and are not under our registration statutes required to be recorded.

4. *Same; transferree of does not derive title from transferror.* The transferee of a bond for titles does not derive title legal or equitable to the land mentioned in the bond, from his

[Cochran & Ramsey v. Adler *et al.*]

transferror, but only the right to pay the purchase money to the maker of the bond and receive from him a deed of conveyance. This right is only an imperfect equity which may ripen into an equitable title by the payment or tender of the purchase money to the owner of the land.

5. *Same; after holder transfers it, he cannot mortgage the land embraced in it.*—After the holder of a bond for title to land has transferred it to another, he cannot make a valid mortgage on the land embraced in the bond, or do any act which will defeat of its legitimate consummation the right of the transferree to pay the purchase money and receive a title.

APPEAL from the City Court of Birmingham.
Tried before Hon. W. W. WILKERSON.
The facts are stated in the opinion.

JOHN VARY, and BUSH & BUSH, for appellants, contended, that Cochran and Ramsey were *bona fide* purchasers for value, and cited, *Alston v. Marshall*, 112 Ala. 638; *Jones v. Robinson*, 77 Ala. 439; *Davis v. Davis*, 88 Ala. 523; *Griffin v. Hall*, 111 Ala. 601; *Barton v. Barton*, Ala. 523; *Griwn v. Hall*, 111 Ala. 601; *Barton v. Barton*, 75 Ala. 400; *Milliken v. Faulk*, 111 Ala. 658.

A duly recorded mortgage upon the interest of the vendee holding the bond for title, is valid as against the original vendor and his subsequent vendees.—*Davis v. Davis*, 6 So. Rep. 908.

B. C. JONES, for Bessemer Savings Bank.—The bond for titles are not required to be recorded.—*The State of Ala. v. Cunner*, 69 Ala. 212; *Beard v. Ryan*, 78 Ala. 37; *Gravlee v. Williams*, 112 Ala. 539.

TYSON, J.—The appellants filed their bill to foreclose a mortgage executed to them by Mrs. M. E. Freeman, dated March 31st, 1889, upon certain described real estate. The controversy is whether the Jefferson County Savings Bank and those claiming under it, through mesne conveyances, acquired such a title as is superior to the alleged rights claimed by complainants under their mortgage.

On the 23d day of August, 1887, Albert Adler, the owner of the lot in controversy, executed to Milow Rob-

bins his bond for title, covenanting to execute to him, Robbins, a warranty deed to the lot upon the payment of certain purchase money notes designated in said bond.

On December 20th, 1887, Robbins by an instrument in writing transferred this bond for title to the mortgagor, Mrs. Freeman, she assuming the payment of his notes to Adler. On the 28th day of February, 1888, more than one year before the execution of complainant's mortgage, and in about two months after the transfer to her, Mrs. Freeman and her husband transferred this bond to the Jefferson County Savings Bank. On the 24th day of May, 1889, about two months after the mortgage to complainants was recorded, the bank surrendered to Adler the bond and the transfer thereof, paid to him the purchase money, and obtained a deed from him to the property. Neither the bond for title nor the transfer from Robbins to Mrs. Freeman nor the transfer from Mrs. Freeman and her husband to the bank was ever recorded.

The contention of appellant is, that as the transfer of the bond to the bank was not recorded, and as it acquired title from Adler subsequently to the execution of the mortgage and its recordation, that its rights to the property were subordinate to the lien of the mortgagees; the complainants not being shown to have had any actual notice of the transfer when the mortgage was delivered. By the bond Adler bound himself to make a warranty deed to Robbins, upon the performance by him of the condition of paying the purchase money notes. Failing, in the event of a performance, Adler would have become liable for damages, it may be, to the extent of the penal sum named in the bond. By the acceptance of the bond and the execution of his notes, Robbins bound himself to pay to Adler the sum specified in the notes, and became entitled to the possession of the lot, if it was one of the terms of the contract that he was to have the possession.

When Mrs. Freeman became the transferee of the bond she was invested with the same rights which Robbins had—no more and no less. As to the lot, the subject of the contract of sale, she became the owner of an imperfect equity in it. She had the right to discharge the

notes held by Adler and demand of him a deed in accordance with the terms of the bond. And, doubtless, if after paying to Adler the amount of the purchase money notes, upon his refusal to execute to her a deed, she could have enforced a specific performance of the contract in a court of equity or maintained a suit at law against him for a breach of the condition of the bond.—*Gravlee v. Williams,* 112 Ala. 539. But as a condition precedent to her right to enforce either of these remedies, she had to pay or tender to him the purchase money. And a compliance with this condition by her, would have given her an equitable title to the lot which she could have conveyed by deed or mortgage. She, however, did not ripen this imperfect equity into a perfect one, but chose, long before making the mortgage to complainants, to part with the bond, the only means by which she could or under which she had the right to ever acquire either the legal or equitable title to the lot. She could, if she had desired, have abandoned her rights in the property, and thereby compelled Adler to enforce his contract of sale as the remedies of the law afforded.

It is not contended that the complainants acquired by their mortgage a superior title to Adler to the lot, and indeed, there is no room for such insistence, since the bill alleges and the evidence shows without dispute that Mrs. Freeman acquired her rights by transfer of the bond from Robbins. While it is true, that Mrs. Freeman is regarded in a court of equity as the owner of the lot as between her and Adler, this equitable ownership could not extend beyond the period in which she had the right to enforce the terms of the bond. She cannot, therefore, be so regarded after she transfers it to another, clothing her transferee with this equitable ownership, which he may ripen into a perfect equitable or legal title.

The bond for title and the writings assigning it, conveying no estate either legal or equitable, were not required to be recorded under our registration statutes providing protection to creditors and purchasers against dormant conveyances and loans. They were not conveyances of an unconditional estate in the lot, nor were they mortgages or instruments in the nature of a mortgage. Code 1896, § § 105 *et seq. Brown v. Chambers,* 12 Ala. 697.

In addition to what we have said above, there is another reason, which is conclusive to our minds against the rights of the complainants to recover. The bank did not derive its title, legal or equitable, to the lot from Mrs. Freeman, the mortgagor through whom complainants claim, but acquired from her, long before complainant's mortgage was made, the right to pay to Adler the debt and receive as it did from him the deed conveying to it the title. This right acquired by the bank from Mrs. Freeman could not be defeated of its legitimate consummation by any act of hers.

The decree is affirmed.